# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KEVIN C. BRATHWAITE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A.No. 06-472-GMS |
| | ) | |
| THOMAS L. CARROLL, et al., | ) | |
| | ) | |
| Respondents. | ) | |

## ANSWER

Pursuant to the Rules Governing § 2254 Actions, 28 U.S.C. foll. § 2254,

Respondents state the following in response to the petition for writ of habeas corpus:

<u>Facts</u>

In October 1995, Kevin C. Brathwaite met Carmen Rodriguez in the area of

Fourth and Harrison Streets in Wilmington. [B-1] [1]. Brathwaite, who supported himself

by dealing drugs, met Rodriguez in a known drug area, and correctly identified her as a

prostitute. *Id.* Rodriguez regularly acted as an intermediary between drug buyers and

sellers, and sold her own body for both money and drugs. [B-2]. At this first meeting,

Brathwaite asked Rodriguez to purchase cocaine for him. [B-1]. After she made the

purchase, Brathwaite invited Rodriguez to come to his apartment to ingest the illicit

drugs. [B-3]. Upon returning to Bratwhaite's apartment, Rodriguez first consumed her

own supply of crack cocaine. *Id.* Rodriguez then asked Brathwaite for some of his

drugs; he responded by suggesting they engage in sexual relations. *Id.* When Rodriguez

---

[1] Citations are to the Appendix to the State's Answering Brief in case No. 169, 2003.

refused Brathwaite's offer, he grew angry, prompting Rodriguez to leave and walk back to Fourth Street.  [B-3-4].

Brathwaite found Rodriguez approximately one week later, October 18, 1995, in the area of Second and Broom Streets.  [B-5].  Brathwaite approached Rodriguez in his car, informed her that he was making some drug deliveries at the time, and showed her two bags containing white powder.  *Id*.  Rodriguez voluntarily got into Brathwaite's car, and accompanied him to several locations around Wilmington while he made drug deliveries.  *Id*.  The two eventually returned to Brathwaite's apartment.  [B-6].  Rodriguez initially watched television while Brathwaite checked his phone messages and placed a phone call.  [B-7].  Brathwaite then informed Rodriguez that he had some drugs on the top of the dresser in his bedroom available for her immediate use.  *Id*.

Rodriguez went into the bedroom, but saw no drugs on the dresser.  *Id*.  As she turned around, Brathwaite struck her in the mouth with his elbow, placed his arms around her in a choke-hold, and ordered her to remove her clothing.  [B-7-8].  Brathwaite is a former professional football player and a physically strong man.  *See* D.I. 4 at 3.  While restraining Rodriguez, Brathwaite told her that she had angered him by using drugs with him a week ago and refusing to have sexual relations with him.  He made it clear that she would not repeat that behavior on this occasion.  [B-9].  He ordered Rodriguez to tie a blue bandana around her eyes, which he then tightened.  [B-8].

Brathwaite then compelled Rodriguez to perform fellatio.  [B-9].  He next forced Rodriguez to have vaginal intercourse with him in various positions on his bed.  [B-10]. While on the bed, the bandana slipped from its position enough for Rodriguez to observe

a pair of pliers, causing her to believe that Brathwaite meant to cause her additional violence if she actively resisted.  [B-11].

Brathwaite then commenced anal intercourse with Rodriguez.  Rodriguez repeatedly informed Brathwaite that he was causing her pain, and she pleaded with him to stop.  *Id*.  Eventually, Rodriguez informed Brathwaite that the intercourse was causing her to need defecate.  *Id*.  Brathwaite swore at her and walked her, still blind-folded, from his bed to the bathroom with his penis still inside her rectum.  [B-11-12].  After Brathwaite finally released her, Rodriguez had to clean up the bathroom floor from a combination of stool and semen.  [B-12].  She left the blue bandana on the edge of the tub in the bathroom.  *Id*.

Brathwaite then drove Rodriguez back to the area of Second and Lancaster. There, she flagged down the first police car that she saw and informed the officer that she had been raped.  [B-13].  After identifying the apartment where Brathwaite raped her, the police took Rodriguez to the hospital for medical treatment and evidence collection.  The examination of Rodriguez by medical staff revealed a busted lower lip.  [B-15].

When police arrived at Brathwaite's apartment, Brathwaite admitted to having sexual relations with a woman, and he gave consent for a search of his apartment.  [B-16].  During the search, police found two bags of white powder, a pair of pliers in the bedroom dresser, and a bandana in the bathroom.  [B-17].  Furthermore, Brathwaite admitted that he tricked Rodriguez into having sexual relations as a way of paying her back for cheating him during the course of an earlier drug transaction.  [B-18].

Police arrested Brathwaite on October 20, 1995, and he remained incarcerated for several days before posting bail.  While free on bail, Brathwaite again encountered

Rodriguez on November 4, 1995 in Wilmington, followed her for more than one block, and implicitly threatened her with physical harm if she continued to cooperate with the prosecution of the charges against him. [B-19]. Rodriguez fled from Brathwaite and advised the police of his latest intimidating behavior, resulting in a new criminal charge against him. *Id*.

Police arrested Brathwaite for this new offense on November 8, 1995. Brathwaite again posted bail and was released from prison on November 17, 1995. Over the past several months, Brathwaite had met Salan Chapman. No evidence suggests that Chapman was a prostitute. Chapman first met Brathwaite while she and her sister were in a car, stopped at a light, and Brathwaite had pulled up next to them. [B-20]. Sitting in traffic, Brathwaite and Chapman exchanged phone numbers, and they subsequently spoke by phone. *Id*. On one occasion, Chapman and her sister visited Brathwaite at his apartment. [B-21]. On January 13, 1996, Brathwaite called Chapman and told her that his car had broken down, and he requested her assistance. *Id*. Chapman found Brathwaite in Wilmington, and, after an unsuccessful attempt to restart his car, she offered him a ride in her car. [B-22].

Brathwaite, who had been making drug deliveries at the time, asked Chapman to drive him to a motel on Route 9 in New Castle. [B-23]. Chapman complied with his request, and she waited in the car for a few minutes while Brathwaite went inside the motel. *Id*. Chapman then drove Brathwaite back to his apartment where he offered her a leather jacket as thanks for her service. *Id*. Chapman accompanied Brathwaite inside his apartment, but when she went into his bedroom to take the jacket, she found none. [B-24]. When Chapman attempted to leave the bedroom, Brathwaite grabbed her from

behind and placed her in a choke-hold.  [B-25].  He ordered her to remove her clothing before he hurt her.  After she complied, Brathwaite performed cunnilingus on Chapman. [B-26].  Over her objections, he then proceeded to engage in vaginal intercourse with her. *Id*.

Brathwaite next compelled Chapman to place a sock in her mouth, and he tied it in place with a piece of cloth.  *Id*.  He then tied another piece of cloth around her eyes. [B-27].  After repositioning her on the bed, Brathwaite resumed having vaginal intercourse with Chapman.  *Id*.  After a period of vaginal intercourse, Brathwaite forced Chapman to submit to anal intercourse.  [B-28].  As he had done with Rodriguez, when Chapman needed to defecate, he walked her from the bedroom to the bathroom, attempting to keep his penis in her rectum.  [B-29].  Brathwaite then resumed anal intercourse in the bathroom.  *Id*.  He then returned Chapman to the bedroom and forced her to perform fellatio and to swallow his ejaculate.  *Id*.  He accompanied this act with another threat of physical harm.  *Id*.  When Chapman asked Brathwaite why he was doing these things to her, he replied that he did not think that she liked him and would not have consented to sexual relations with him otherwise.  [B-28].

Brathwaite eventually permitted Chapman to leave after she told him that she would return later that night.  [B-29].  Chapman then drove to her boyfriend's house and told him that she had been raped.  [B-29-30].  She next went to the hospital, and then later that same day to the police station.  [B-30].  Chapman presented to medical personnel with evidence of bruising to her genitalia, as well as blood in her rectum.  [B-31-32].  After Chapman identified Brathwaite for the police, the police interviewed

Brathwaite on January 13, 1996. Brathwaite admitted to sexual intercourse with Chapman, but, again, he claimed that it was consensual. [B-33].

Police arrested Brathwaite at the conclusion of the interview, and he remained incarcerated until February 5, 1996 when he again posted bail. Brathwaite remained free on bail until May 26, 1996 when he was committed as a result of a non-appearance in court. Brathwaite yet again made bail, and was released on May 29, 1996. Little more than a week later, Brathwaite selected another victim to sexually assault. On June 7, 1996, Brathwaite encountered Shana Osbourne in the area of 29th and Tatnall Streets in Wilmington at approximately 5:00 a.m. [B-34]. Like Rodriguez, Osbourne was a drug addict and a prostitute. *Id*.

Brathwaite approached Osbourne, told her that he had a large quantity of cocaine, and asked her if she would like to go to his apartment with him. *Id*. Osbourne voluntarily got into Brathwaite's car; she admitted that at this point she was contemplating a sex-for-drugs exchange. *Id*. While in the car, Osbourne voluntarily removed her underwear and permitted Brathwaite to fondle her genitalia. [B-35]. After arriving at his apartment, Brathwaite took a spoon, some baking soda and water, as if to prepare to smoke some crack cocaine. *Id*. Brathwaite took the drugs and paraphernalia into his bedroom and told Osbourne to follow him. [B-36]. Once inside, he told her to face the window. *Id*. Osbourne complied, at which point Brathwaite produced a gun and struck her in the back of her head with it. *Id*.

Brathwaite then pointed the gun in Osbourne's face and told her not to scream or that he would hurt her. [B-37]. He next forced her to undress and bend over the bed. *Id*. Brathwaite then led her back to the living room, ordered her to the floor, and compelled

her to perform fellatio on him, while holding the gun at her. *Id*. When Osbourne begged him to stop, he told her that was how he "got off." *Id*.

When Osbourne asked him to let her go, he informed her that she could not leave until he had ejaculated three times. [B-38]. Brathwaite then pushed the tip of the gun into her vagina and told her to be quiet. *Id*. Brathwaite then proceeded to engage in vaginal intercourse with Osbourne in various positions. *Id*. After a short break, Brathwaite next attempted to engage in anal intercourse with Osbourne, but after her pleadings, he relented, and instead compelled her to perform fellatio until he ejaculated. [B-39]. Brathwaite fell asleep next to Osbourne with his gun in his hand, and one of his arms draped across her. [B-40]. They remained in this position until awakened by a knock at the apartment door. *Id*. After two men entered, Brathwaite directed Osbourne to dress and then drove her to 30th and Washington Streets. [B-41].

After exiting the vehicle, Osbourne went to a phone booth and called the police to report that she had been raped. *Id*. After the police arrived, she identified the apartment complex where the rape occurred, and she then went to the hospital for medical treatment and evidence collection. *Id*. The medical examination revealed dried semen on Osbourne's neck, chest, and thighs, as well as bruising to her genitalia. [B-42-43]. Osbourne also presented with what would be described as a busted lip. [B-42]. When police went to Brathwaite's apartment, they recovered a BB gun from his car that resembled a large-caliber handgun. [B-44].

<u>Procedural History</u>

On November 12, 1996, the grand jury returned a 34-count indictment against Brathwaite. This indictment, ID No. 9510007098, was a superseding indictment of six

previously returned indictments (ID Nos. 9510007098; 9510012606; 9511004047; 9601006324; and 9607012270).  The superseding indictment contained all of the charges contained in the six separate indictments.  (D.I. 16).[2]  The charges were as follow: six counts of Unlawful Sexual Intercourse ("USI") in the Second Degree (11 *Del. C.* § 774 (repealed 1998))  committed against Donna Miller on September 8, 1995; five counts of USI Second Degree and one count of Assault in the Third Degree (11 *Del. C.* § 611) committed against Carmen Rodriguez on October 18, 1995; one count of Act of Intimidation (11 *Del. C.* § 3533) committed against Carmen Rodriguez on November 4, 1995; seven counts of USI Third Degree (11 *Del. C.* § 773 (repealed 1998)), and two counts of Unlawful Sexual Penetration ("USP") Third Degree (11 *Del. C.* § 770 (repealed 1998)) committed against Salan Chapman on January 13, 1996; six counts of USI First Degree (11 *Del. C.* § 775 (repealed 1998)), one count of USP First Degree (11 *Del. C.* § 772 (repealed 1998)), one count of Assault Third Degree, one count of Kidnapping First Degree (11 *Del. C.* § 783A), and three counts of Possession of a Deadly Weapon During the Commission of a Felony ("PWDCF") (11 *Del. C.* § 1447) committed against Shana Osbourne on June 7, 1996; and one count of Robbery First Degree (11 *Del. C.* § 832), one count of PWDCF, one count of Assault Third Degree committed against Darius Williams on June 7, 1996.

On December 22, 1997, Superior Court granted Brathwaite's motion to sever the three counts of the indictment related to Darius Williams (the State eventually dismissed these charges).  (D.I. 73).  Superior Court denied Brathwaite's motion to sever any of the other charges from the indictment.  When Donna Miller failed to appear for trial, the six

---

[2] The "D.I." references in this section are to docket items in Superior Court ID No. 9510007098.

counts of the indictment related to her were dismissed.  The State also dismissed the

kidnapping and three weapons charges related to Osbourne.  Trial commenced on August

18, 1998.  The jury acquitted Brathwaite of one count of USP Third and one count of

USP First, and convicted him of the remaining nineteen counts of the indictment.  (D.I.

86).  On December 4, 1998, Superior Court sentenced Brathwaite to six life sentences,

plus an additional 110 years of incarceration.  (D.I. 93).

    Brathwaite filed a direct appeal of his conviction to the Delaware Supreme Court

and raised two issues: (1) Superior Court's denial of his motion to sever the charges

against each of the victims; and (2) the absence of the words "without consent" from two

of the USI Second counts of the indictment.  The Delaware Supreme Court affirmed the

convictions.  *Brathwaite v. State*, 1999 WL 1090581 (Del.).

    On December 16, 1999, Brathwaite filed a motion for new trial in Superior Court.

(D.I. 109).  Superior Court appointed Jerome Capone to represent Brathwaite in his

motion for new trial.  (D.I. 112).  After two evidentiary hearings on Brathwaite's motion

(on November 2, 2001 and May 21, 2002), (D.I. 138, 142), Superior Court denied

Brathwaite's motion on March 17, 2003.  *State v. Brathwaite*, 2003 WL 1410155 (Del.

Super. Ct.) (D.I. 159).  Brathwaite appealed that decision, advancing two issues: (1)

denial of his right to self-representation; and (2) concealment of evidence by the State

and perjury of State witnesses.[3]  On February 22, 2005, the Delaware Supreme Court

remanded the matter to Superior Court for further consideration of the self-representation

---

[3] Despite having been represented by counsel on his motion for new trial, Brathwaite
sought, and Superior Court granted him, permission to represent himself on the appeal of
Superior Court's denial of his motion for new trial.  Superior Court held a hearing, after
which it determined that Brathwaite was competent to represent himself on appeal.  (D.I.
166).

issue. *Brathwaite v. State*, No. 169, 2003, Berger, J. (Del. Feb. 22, 2005). Following the submissions of affidavits by Brathwaite's three former counsel in the case and a response by the State, Superior Court issued an order on remand on December 8, 2005, denying Brathwaite's motion for new trial. (D.I. 195). On July 10, 2006, the Delaware Supreme Court affirmed Superior Court's decision. *Brathwaite v. State*, 2006 WL 1911132 (Del.).

<u>Argument</u>

Brathwaite has now applied for federal habeas corpus relief. In his petition signed July 31, 2006, Brathwaite presents six claims for relief: 1) that he was denied the right to self-representation at trial; 2) that he received ineffective assistance of counsel because his attorney on direct appeal failed to raise the self-representation issue; 3) that his right to due process was violated when Superior Court failed to address a motion pre-trial, and he was denied the chance to present evidence at a post-trial evidentiary hearing; 4) that State witnesses committed perjury at the evidentiary hearings; 5) that his right to due process was violated when Superior Court denied his motion to sever the indictment; and 6) that his right to due process was violated when Superior Court did not dismiss two counts of the indictment that did not contain the phrase "without consent."

I. Brathwaite presented his first claim, that he was denied the right to represent himself, to the Delaware Supreme Court on appeal from the denial of his motion for new trial. Thus, Brathwaite has exhausted his state remedies as to this claim. *See Smith v. Digmon*, 434 U.S. 332 (1978). The Delaware Supreme Court's decision that Brathwaite waived his right to self-representation in favor of his right to counsel amounted to a reasonable application of clearly established federal law for purposes of section 2254(d)(1).

While Brathwaite was represented by David Facciolo, an Assistant Public Defender, Brathwaite filed a motion in Superior Court to represent himself. Before Superior Court had ruled on Brathwaite's motion to proceed *pro se*, Facciolo moved to withdraw from the case. Shortly thereafter, Superior Court granted counsel's motion to withdraw, and, on December 15, 1997, appointed Thomas Foley, a conflict counsel, to represent Brathwaite. The Delaware Supreme Court recognized that before a defendant can exercise his right to self-representation, a court must first determine that he has knowingly and voluntarily relinquished his Sixth Amendment right to counsel. *See Stigars v. State*, 674 A.2d 477, 479 (Del. 1996). Citing *Buhl v. Cooksey*, 233 F.3d 783, 800 (3d Cir. 2000), the Delaware Supreme Court observed that a defendant may nonetheless waive the right to self-representation after asserting the right. *Brathwaite v. State*, 2006 WL 1911132, *2 (Del.). Superior Court found that: Brathwaite was pleased to be represented by Foley; Brathwaite never informed Foley that he was interested in representing himself; and Brathwaite admitted to Superior Court that he was satisfied with Foley's representation. *Brathwaite v. State*, No. 169, 2003, Toliver, J., Order of Remand (Del. Super. Ct. Dec. 7, 2005). Based on these facts, the Delaware Supreme Court found that Brathwaite never renewed his request to proceed *pro se* despite having the opportunity to do so, and thus held that Brathwaite waived his right to self-representation in favor of his right to counsel. *Brathwaite v. State*, 2006 WL 1911132 (Del.).

Brathwaite cannot demonstrate that the Delaware Supreme Court's decision amounted to an unreasonable application of clearly established federal law. Under 28 U.S.C. § 2254(d), a federal court can only issue a writ of habeas corpus if the state court

decision being challenged was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "Contrary to … clearly established federal law" means "diametrically different," opposite in character or nature," or "mutually opposed." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "Moreover, the state court judgment must not merely be contrary to law as articulated by any federal court. It must contradict 'clearly established' decisions of the United States Supreme Court alone." *Fischetti v. Johnson*, 384 F.3d 140, 147 (3d Cir. 2004). "An unreasonable application of Supreme Court precedent occurs when a state court applies the correct rule to specific facts in an objectively unreasonable way." *Id*. at 148. "Touchstone precedents are not to be examined by looking to broad pronouncements or generative principles in [Supreme Court precedent]." *Id*.

In his briefing before this Court, Brathwaite asserts that he invoked his right to self-representation on eight separate occasions. On March 3, 1997, Brathwaite filed a pleading entitled "Motion to Proceed Pro Se," but the contents of the motion belie its title. (D.I. 27). The motion itself states that "This defendant strongly feels that if he is granted permission to file his own motions, he would be more effective than present counsel [David Facciolo]." *Id*. The seven other docket items that Brathwaite contended in his brief to the Delaware Supreme Court indicated his desire to represent himself instead show that Brathwaite sought to retain counsel and be permitted to supplement his attorney's filings, essentially acting as co-counsel. Brathwaite's March 10, 1997 letter, which followed Superior Court's rejection of his *pro se* filings on March 7, 1997, referenced docket item 27, but it was no more than an inquiry into whether earlier letters

that he had written had become a part of the Superior Court record.  (D.I. 31).

Brathwaite's next *pro se* pleading, a letter filed on March 18, 1997, did not convey any

desire to waive counsel.  The letter instead sought copies from the six docket sheets that

existed before superseding indictment combined all matters into one.  (D.I. 51).

Brathwaite included a copy of his rap sheet to assist the Prothonotary in answering his

request.  *Id.*

On March 21, 1997, Brathwaite clarified his earlier intentions and specifically

moved for permission to participate with counsel.[4]  (D.I. 32).  Again, on March 27, 1997,

Brathwaite wrote requesting permission to participate with counsel.  (D.I. 34).  The next

docket entry that, according to Brathwaite, invoked his right to self-representation is no

more than a letter filed on April 25, 1997 requesting a docket sheet.  (D.I. 40).

Brathwaite claims that his letter filed on May 13, 1997 demonstrated his desire for self-

representation: that letter, however, only requested that Superior Court direct Facciolo to

file a motion to dismiss the charges against him and to provide him with copies of all

police reports.  (D.I. 44).  When Brathwaite filed another letter with the Prothonotary on

May 15, 1997, he did not assert a waiver of counsel and right to self-representation; he

instead asked that he receive a copy of a motion filed by the bondsperson to be relieved

of that responsibility.  (D.I. 46).  Directly contrary to Brathwaite's claim that Facciolo

misled him regarding the status of his representation, Facciolo notified Brathwaite of his

motion to withdraw, which was necessitated by disagreements on matters of trial strategy.

*See* Ex. A to State's Supplemental Memorandum, No. 169, 2003.

---

[4] The Delaware Supreme Court rejected this argument and held that Brathwaite's motion
was not equivocal.  *Brathwaite v. State*, 2006 WL 1911132, n. 6 (Del.).

Superior Court granted Facciolo's motion to withdraw as counsel on December 15, 1997 and appointed Foley to represent Brathwaite. (D.I. 72). After that date, Brathwaite made no further mention of self-representation. As Foley's affidavit states "Brathwaite was uncomfortable having Mr. Facciolo as his Public Defender, and was satisfied to have private counsel represent him, albeit in a Court-Appointed capacity. Hence, the issue about Mr. Brathwaite proceeding *pro se* was never raised again by him." Foley concluded by stating "[Brathwaite] was more than happy to have me as his attorney, and never asked me to request that he proceed *pro se*, and/or participate as co-counsel." *See* Ex. B to State's Supplemental Memorandum, No. 169, 2003.

During trial, Brathwaite addressed Superior Court on four separate occasions. *See* D.I. 99, p. 114-15; D.I. 99, p. 223-25; D.I. 101, p. 108-09; D.I. 101, p. 115-16. During none of these colloquies did Brathwaite ever express a desire to represent himself. To the contrary, during three of these four colloquies, Brathwaite specifically expressed his satisfaction with his representation by Foley.

Brathwaite's references to self-representation in March 1997 by their very nature were ambiguous at best, and overtly manipulative at worst. Brathwaite made nothing clear but that he did not want to be represented by Facciolo. After Superior Court appointed Foley as counsel, Brathwaite discontinued his *pro se* letter filing. When given the opportunity to discuss his representation by Foley during trial, Brathwaite unequivocally stated his satisfaction, and he never suggested that he did not want to be represented by counsel.

The record clearly establishes that Brathwaite only hinted at a desire to represent himself and filed various letters with Superior Court in an effort to have Facciolo

replaced with different counsel. When Brathwaite succeeded in that tactic, he cooperated with his new attorney and never suggested to Superior Court that he sought to represent himself during the period of time, most critically at trial, that he was represented by Foley. Had Superior Court permitted Facciolo to withdraw and left Brathwaite to represent himself, Brathwaite would now be alleging that he was denied his right to counsel. Brathwaite has attempted to engineer a "heads I win, tails you lose" scenario.

Assuming that Brathwaite's motion amounted to an unequivocal request for self-representation, the Delaware Supreme Court's conclusion that Brathwaite waived that right in favor of his right to counsel is neither contrary to nor an unreasonable application of United States Supreme Court precedent. First, the Supreme Court in *Faretta v. California*, 422 U.S. 806, 821 (1975) wrote that defendants who wish to proceed without the aid of counsel must be allowed to do so "[u]nless the accused has acquiesced in such representation." That is enough to suggest that the state courts' decision was not contrary to Supreme Court precedent. In turn, the Delaware Supreme Court cited several cases from the federal Circuit Courts involving factually similar scenarios where a defendant waived or abandoned a desire for self-representation. Decisions of lower federal courts may be helpful in ascertaining the reasonableness of a state court's application of clearly established United States Supreme Court precedent. *See, e.g., Fischetti v. Johnson*, 384 F.3d 140, 149 (3d Cir. 2004).

The Delaware Supreme Court considered the opinion of the Third Circuit in *Buhl v. Cooksey*, 233 F.3d 783, 800 (3d Cir. 2000) for the proposition that "it is well established that a defendant can waive the right of self-representation after asserting it." The Delaware Supreme Court cited a Second Circuit decision that found that a defendant

15

who had asserted his right to self-representation had abandoned that right once the trial court appointed new counsel, when at subsequent hearings both pre- and during trial the defendant voiced no dissatisfaction with his new representation and did not bring up the subject of self-representation. *Wilson v. Walker*, 204 F.3d 33, 38-39 (2d Cir. 2000). The Second Circuit characterized the defendant's cooperation with subsequently appointed counsel, his failure to voice disapproval with their representation, and lack of a reassertion of a request for self-representation as abandonment of the right to self-representation, a factual scenario that the Delaware Supreme Court found to be analogous to Brathwaite's behavior in this case. *Id*. at 39. The Delaware Supreme Court also relied on the decision of the Seventh Circuit in *United States v. Johnson*, 223 F.3d 665 (7th Cir. 2000). In *Johnson*, the Seventh Circuit noted that a defendant can either expressly or impliedly waive the right to self-representation. *Id*. at 668. Finding that the defendant's request for self-representation was filed in a "fit of dissatisfaction with his lawyers" that "soon passed," the court concluded that "the only plausible inference from defendant's conduct is that he acquiesced in the denial by judicial inaction of his motion and thereby deliberately relinquished his right to self-representation. *Id*. at 669.

The Seventh Circuit provided additional guidance on this issue in *Cain v. Peters*, 972 F.2d 748 (7th Cir. 1992) that the Delaware Supreme Court considered in denying Brathwaite's alleged denial of his right to self-representation. *Cain* likewise dealt with a defendant who expressed his intense displeasure with his public defender and who requested to represent himself because he could do a better job by representing himself. *Id*. at 749. As in Brathwaite's case, the trial court had permitted the public defender to withdraw and appointed a private attorney. *Id*. With the newly appointed attorney, the

defendant never again mentioned the possibility of self-representation. *Id*. Interpreting *Faretta*, the *Cain* court held that "given the rule that only an informed, and ceremonial, waiver surrenders the right to a lawyer at trial, it follows that a silent or equivocating defendant has counsel, and correspondingly forfeits the inconsistent right to represent himself." *Id*. at 751. Likewise, Brathwaite's "behavior is understandable, because his demand to conduct his own defense grew out of dissatisfaction with the public defender. He wanted, and got, a different lawyer." *Id*. *See also Raulerson v. Wainwright*, 732 F.2d 803, 809 (11th Cir. 1984) ("Although a defendant need not continually renew his request to represent himself even after it is conclusively denied by the trial judge, he must pursue the matter diligently.").

Given that the United States Supreme Court's decision in *Faretta* does not command that Brathwaite represent himself in the context of that request, and the numerous lower federal court decisions that have interpreted *Faretta* consistently with the Delaware Supreme Court's decision in this case, it cannot be said that the Delaware Supreme Court's decision to hold that Brathwaite had abandoned his right to proceed *pro se* was an unreasonable application of clearly established United States Supreme Court precedent.

II. In his second claim for relief, Brathwaite contends that his attorney on direct appeal provided ineffective assistance in failing to raise the denial of self-representation as an issue on appeal. In Superior Court, Brathwaite raised a claim of ineffective assistance of counsel related to trial counsel's alleged refusal to call several witnesses. In his opening brief on appeal from Superior Court's denial of his motion for a new trial, Brathwaite did not raise ineffective assistance of counsel in any context. In Brathwaite's

February 7, 2006 "Response to State's Supplemental Memorandum," he concluded by arguing that "direct appeal counsel failed to raise this issue [denial of right to self-representation] on direct appeal despite a clear request from the defendant." In its July 10, 2006 order, the Delaware Supreme Court held:

> After careful consideration of the parties' briefs, we find it manifest that the judgment of the Superior Court should be affirmed on the basis of the well-reasoned decision dated March 17, 2003. … The Superior Court also correctly applied the settled standard governing ineffective assistance of counsel claims. Although Brathwaite now contends that he was not claiming that his counsel was ineffective, his motion expressly states that, 'counsel's performance fell below the professional standard in not calling witnesses and putting on the only valid defense available.' Thus, we reject Brathwaite's attempt to delete his ineffective assistance of counsel claims from consideration on appeal.

Thus, Brathwaite has exhausted his state remedies as to this claim. *See Smith v. Digmon*, 434 U.S. 332 (1978). *See also Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004) (state has adjudicated a petitioner's claim on the merits for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substantive constitutional claim advanced, rather than denying the claim on the basis of a procedural rule).

The Delaware Supreme Court's decision that counsel was not ineffective amounted to a reasonable application of clearly established federal law for purposes of section 2254(d)(1). To prevail, Brathwaite had to show that his counsel's representation fell below an objective standard of reasonableness and that, but for counsel's unprofessional errors, there was a reasonable probability that the outcome would have been different—the holding of the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The Supreme Court, in *Smith v. Robbins*,

528 U.S. 259 (2000), extended the *Strickland* analysis to counsel's failure to advance a particular claim on appeal. Brathwaite cannot satisfy this burden.

To prevail on this claim, Brathwaite must overcome nearly insurmountable barriers. Brathwaite cannot show that the Delaware Supreme Court unreasonably applied *Strickland* given the court's determination that Brathwaite waived his right to self-representation in favor of his right to counsel. The habeas petitioner raising a claim that counsel missed an issue on appeal must establish a reasonable probability that he would have prevailed on appeal. *Smith,* 528 U.S. at 287-88; *Dunacn v. Morton*, 256 F.3d 189, 201 (3d Cir. 2001), *citing Strickland*, 466 U.S. at 695. Here, Brathwaite's complaint about counsel's failure to raise a self-representation issue on appeal failed under *Strickland's* prejudice prong.

Determination of prejudice is necessarily dependent on a review of the merits of Brathwaite's self-representation claim. *See Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990). If Brathwaite's allegations were insufficient to show a denial of his right to self-representation, then he was not prejudiced by allegedly deficient performance of counsel in failing to raise the issue on appeal. *Id*. Brathwaite's waiver of his right to self-representation, through his acceptance of his replacement counsel, prevents any finding of prejudice on the part of counsel for failing to raise a non-meritorious issue on direct appeal. *Id,* at 1292. *See also Gonzalez-Gonzalez v. United States*, 2002 WL 31416029, *1 (1st Cir.); *Bennett v. Duckworth*, 909 F.Supp. 1169, 1181 (N.D. Ind. 1995) (if there was not an improper denial of the right to self-representation, there cannot be ineffective assistance for the failure to raise the issue by counsel on appeal). The

decision of the state courts as to this claim of ineffective assistance was a reasonable application of *Strickland*.

III. Brathwaite's third claim for relief is a composite of his first and fourth claims. Brathwaite alleges "violation of right to due process. The trial court neglected to properly delegate all pretrial motions prior to the commencement of trial. Petitioner denied right to present evidence at evidentiary hearing." (Petition at 9). Read in conjunction with the brief in support of the petition, the only pretrial motion to which Brathwaite can be referring relates to the self-representation issue addressed in connection with Brathwaite's first claim for relief. Thus, to the extent that his third ground for relief relates to the manner in which Superior Court considered his purported self-representation motion, Brathwaite suffered no injury.

The second part of Brathwaite's third ground for relief, that he was "denied the right to present evidence at the evidentiary hearing," is part and parcel of his fourth ground for relief—the manner in which Superior Court conducted the two evidentiary hearings on his motion for a new trial. Because this part of his third claim is indistinguishable from his fourth claim, it must be denied for the reasons set out below with respect to Brathwaite's fourth claim.

IV. Brathwaite's fourth claim for relief relates to post-trial, post-direct appeal matters, complaining that the state courts violated his right to due process in the handling of his Rule 33 motion. A petitioner seeking federal habeas relief may only challenge the fact or duration of confinement; this claim relates to the manner in which the state courts disposed of his post-conviction application. Allegations such as Brathwaite has made may provide a cause of action for a section 1983 claim, but the issue is not cognizable in

federal habeas corpus. *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) ("the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state . . . proceeding that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation.") (emphasis in original). Delay in processing a collateral claim does not make the continued imprisonment of a habeas petitioner unlawful, and therefore does not warrant federal habeas relief. *Id*, *quoting Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996). The Third Circuit specifically held that "to the extent that delay in the processing of a collateral petition violates due process, we hold that the petitioner's remedy, if any, is through a lawsuit for damages or a writ of mandamus rather than through the habeas corpus proceeding itself." *Hassine*, 160 F.3d at 955.

The Third Circuit has since extended its holding in *Hassine* to apply not just to delay in post-conviction proceedings, but any allegations of error in the course of a prisoner's post-conviction relief. *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004). *Lambert* dealt not merely with delay in the collateral proceedings, but an allegation by the prisoner that the prosecution had manipulated evidence at the post-conviction evidentiary hearing, the same claim that Brathwaite makes here. *Id.* The *Lambert* court emphasized that "It is the original trial that is the 'main event' for habeas purposes." *Id.* Because under *Hassine* and *Lambert*, Brathwaite's fourth claim is not cognizable under section 2254, he is not required to exhaust state remedies. *Tillett v. Freeman*, 368 F.2d 106 (3d Cir. 1989). Thus, his fourth ground for relief must be denied.

V. In Brathwaite's fifth claim, he complains that he was denied a fair trial when Superior Court denied, in part, his motion to sever the indictment. On direct appeal,

however, Brathwaite presented the claim to the state supreme court only in terms of an error under the state criminal procedure rules.  Appellant's Op. Br. at 16, No. 549, 1998.  As a result, Brathwaite's constitutional challenge is not exhausted.  *See, e.g., Bright v. Snyder*, 218 F.Supp.2d 573, 577-79 (D. Del. 2002).  In turn, as explained in *Bright*, Brathwaite's federal due process claim is procedurally barred.  218 F.Supp.2d at 579-80.

VI.  Brathwaite presented his sixth claim, that the indictment was improperly amended as to counts IV and V by adding the words "without consent," to the Delaware Supreme Court in the direct appeal of his conviction. As a result, Brathwaite has exhausted state remedies as to his sixth claim.  *See Smith v. Digmon*, 434 U.S. 332 (1978).

The legality of an amendment to a state indictment is a matter of state law.  *See United States ex rel. Wojtycha v. Hopkins*, 517 F.2d 420, 425 (3d Cir. 1975).  To the extent that Brathwaite's sixth claim alleges state law error, federal habeas relief is unavailable.  *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  To the extent that the sixth claim alleges that amending the indictment during before trial deprived him of notice of the offenses charged, such a claim may properly allege a federal due process issue cognizable on habeas review.  *Wojtycha*, 517 F.2d at 415.  But a review of Brathwaite's claim makes clear that he has only alleged an issue of state law.  His habeas petition simply references the issue that he raised in state court on direct appeal.  Brathwaite's argument in the Delaware Supreme Court clearly states that the amendment issue was not one of notice, but rather an end run of the grand jury process.  ("The issue is not about whether the defense was ambushed by the State's need to amend the indictment.  The issue at bar is more fundamental – whether the trial court can rescue a defective

22

indictment, there by superceding the authority of the Grand Jury indictment process.")
Direct Appeal Op. Br. at 23. It is also evident that the Delaware Supreme Court analyzed
Brathwaite's indictment amendment claim as a state law matter, citing Superior Court
Criminal Rule 7(e). As such, Brathwaite's sixth claim is not cognizable in federal habeas
and must be dismissed. *See Morgan v. Anderson*, 1996 WL 50602 (6th Cir.).

Transcripts and Affidavits

The transcript of Superior Court's hearing on Brathwaite's motion to dismiss on
August 18, 1998 has been prepared. The transcripts of Brathwaite's trial have been
prepared (August 24; August 25; August 26; August 27, 1998), as have transcripts of the
evidentiary hearings held in relation to Brathwaite's motion for new trial (November 2,
2001; and May 21, 2002). Transcript of Brathwaite's motion to represent himself on
appeal from the denial of his motion for new trial, the hearing for which was held on June
27, 2003, has also been prepared. Affidavits, in connection with Brathwaite's motion for
a new trial, were filed by his three attorneys of record: David Facciolo; Thomas Foley;
and Jerome Capone. Brathwaite's sentencing appears to have been recorded, but no
transcript of this event has ever been prepared. Relevant portions of transcript may be
found in the Appendix to the State's Answering Brief to Brathwaite's post-conviction
appeal. In the event that the Court deems production of any additional transcripts
necessary, Respondents anticipate that production of such transcript would require 90
days from the date an order by this Court.

<u>Conclusion</u>

For the foregoing reasons, the petition for a writ of habeas corpus should be denied without further proceedings.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/_____
Gregory E. Smith, I.D. No. 3869
Deputy Attorney General
820 North French Street, 7th Floor
Carvel State Building
Wilmington, Delaware  19801
Dated: February 2, 2007                    (302) 577-8398

## CERTIFICATION OF SERVICE

The undersigned certifies that on February 2, 2007, he electronically filed the attached *Answer* with the Clerk of Court using CM/ECF.  The undersigned further certifies that on February 5, 2007 that he mailed by United State Postal Service the document(s) to the following non-registered participant:

> Kevin C. Brathwaite
> SBI No. 00315294
> Delaware Correctional Center
> 1181 Paddock Road
> Smyrna, Delaware 19977

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/_____
Gregory E. Smith, ID # 3869
Deputy Attorney General
820 North French Street, 7th Floor
Carvel State Building
Wilmington, Delaware 19801
(302) 577-8398