IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

KEVIN C. BRATHWAITE
    PETITIONER

V.                                      C.A. No. 06-472-G.M.S.

THOMAS CARROLL, ET.AL.

FILED

FEB 26 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

PETITIONERS TRAVERSE TO ANSWER

CUSTODY

    Petitioner Agrees that he is
in custody as stated in the
Answer. Petitioner claims that he
is Not "lawfully" in custody because
of the clear violations of his rights
under the United States Constitution
that Are Alleged in the Petition
For writ of Habeas Corpus, And
herein. Except As expressly Admitted

herein. Petitioner denies each
and every allegation of the answer
and re-affirms that his confinement
is in direct violation of the
U.S. Constitution.

## ARGUMENT

GROUND — 1
### Denied Right to Self Representation

The right to self representation
is a right provided by the U.S.
Constitution.
The courts have recognized that
before a defendant can exercise
his right to self representation,
a court must first determine that
he has knowingly and voluntarily
relinquish his Sixth Amendment
right to counsel.
This Petitioner cleary filed
a timely motion to represent
himself approximately a year and
a half prior to the commencement
of trial. The title of the
motion clearly read, "Motion to
Proceed Pro Se". Then to

Conform to the rules of the Court, Superior Court rule, 47, this Petitioner clearly filed A Motion to Participate with Counsel.

Rule, 47, States that the Court will Not Consider Pro Se Applications by defendants who Are represented by Counsel unless the defendant has been granted permission to participate with Counsel.

So therefore, this Petitioner is being Penalized for following the Court rules to the letter.

The State Supreme Courts decision Completely Contradicts itself, Rule 47. AND the U.S. Constitution.

The Supreme Courts decision Claims that the Motion to proceed Pro Se Pursuant to Superior court rule 47 was not properly presented to the Court. AND that the Petitioner Chose Not to Assert or pursue that right As required by the rules of the Court AND/or Applicable law. Nowhere on the records of the Court, does it say

that the petitioners motion was improperly presented to the court. The record simply shows that the motion was filed. If the motion was not properly presented to the court, the motion would ~~have~~ not have been filed by the prothonotary and it would have been returned to the petitioner. Which it was not. This petitioner states again that he followed the court rules to the letter.

This petitioner also, made oral request in open court on May, 19th, 1997 and May, 27th 1997. (See transcripts.) And judge Cooch still refused to hear the motions. This petitioner was later told by David Facciolo that a hearing on the motion to proceed Pro se was held in his absense and that the motion was denied. Mr. Facciolo also told this petitioner that the issue was properly preserved.

Now the respondents are claiming that this petitioner should have addressed the court during trial. During trial is not the time to address pre-trial

MOTIONS. This Petitioner clearly
made the proper Attemps prior
to trial. Therefore the issues
should have been properly preserved.
See. Exhibits Attached to opening
brief.

These respondants Are MAKing
Attempts to MANipulate the court
with twist And turns to MAKe up
different Sceenerios As to this
Petitioners intentions by his Motion
to proceed Pro Se. But the Facts
Are clear. This Petitioner Abided
by the rules of the Court, but he
WAS ignored. See, identical letters
to Judge Cooch And Judge Toliver
dated MAY, 19th, 2007

A Trial Court MAY Not Avoid A
ruling on A Firm request by A
defendant to represent himself.
Niether should A defendant be
required to continually renew his
request to represent himself. After
A clear request, A defendant
Must be heard, And A ruling Must
be MAde. OR The CASE will be
VACAted on Appeal. Id: U.S. V.
MCKINLEY, 58 F.3d 1475, 1480-82
(10th cir) (No hearing)

(5)

ORAZIO, 876 F-2d At 1512
Not required to continually renew...
or make Fruitless Motions.


GRound - 2
           INeffective Counsel


   The respondents claim that this
Petitioner did not raise ineffective
counsel in his opening brief IN ANY
context. This is wrong, See: Page
14, of opening brief. States,
defendant clearly invoked his right to
Self representation. The trial court
clearly Failed to rule upon these
Motions. Defendants right to Self
representation was clearly violated.
   IN Addition: Direct Appeal
Counsel Failed to raise this issue
on direct Appeal, Which is grounds
to grant this claim For relief.
ORAZIO, 876, F-2d At 1512-14
(CAUSE AND Prejudice proven by
Failure to raise claim on Appeal)
   IN the States Argument in their
brief to the State Supreme Court
they claimed that this Petitioner
Never Asked the trial Counsel
to raise the Pro Se issue on

(6)

direct appeal. (See Exhibt-A)
But as soon as this petitioner
proved that he did in fact ask
the trial attorney to raise the
issue, they abandoned that allegation.
(See Exhibit-B).


Ground-3
## Violation of Right to Due Process

THE right to due process is
guaranteed by the United States
Constitution. When the trial court
Neglected to properly rule on
pre-trial motions filed, they
clearly violated rule 12 of the
Superior court rules, that clearly
state, All motions must be
properly delegated prior to the
Commencement of trial. Which
is a clear violation of due
process. Which is protected by
the Constitution.
Also, during the Superior Court
evidentiary hearings, this petitioner
was denied his right to due
process by being denied his right
to present evidence. This

(7)

evidence in question would have
surely given credence to the facts
that this petitioner had been
stating along

The purpose of the evidentiary
hearing speaks for itself, "To provide
evidence." The fact that this
petitioner was denied his right to
utilize the hearing for the
purposes that it was intended
was a clear violation of due
process.

IN all fairness, at the very
least a new trial should be granted
on this issue, because a hand-
writing expert could not exclude
the states witness as the
author of the lone salvaged
letter. (See, Exhibit-C)


GROUND-4
  CONCEALMENT OF EXCULPATORY
  EVIDENCE, State Witness Perjury


The State Supreme Court Neglected
to make a ruling on this issue.


This claim can also be
categorized as a violation of
(8)

due process. But it seems as though everyone is intentionally attempting to avoid addressing the core of the issue at hand. The only reasonable explanation is that the Attorney Generals office dispatched correctional officials to this Petitioners cell to confiscate tangible evidence that was suppose to be presented at the upcoming evidentiary hearing. The correctional officials then turned over all evidence, "numerous letters" and "numerous Photographs" to the Attorney Generals office. When this Petitioner made attempts to request that this evidence be presented to the court at the evidentiary hearing, The correctional officer that confiscated the evidence stated ~~that~~ on record that he gave the items to the Attorney Generals office. And the Attorney Generals office admitted on record that they took possession of these items from correctional officials. And they Attorney Generals office claims that they "lost" the evidence

that this Petitioner needed to
prove his claim. (See, Exhibit-D
in opening brief.)

IN Deberry, the court stated
that the Failure of the state to
produce evidence in it's possession
permitted inference that evidence
would have been exculpatory in
nature and favorable to the
defendant. Deberry V. State, Del.
Supr. 457. A.2d 744, 754 (1983).
Consistant therewith, at the
May, 21st 2002 evidentiary hearing
the court ruled that the missing
evidence contained exculpatory
evidence as alleged by defendant.
Again, The state Supreme court
Neglected to rule on this issue.
At the very least, this issue
Should be remanded and the
court should be ordered to rule
on every issue regarding the
evidence lost by the State.


GROUND -5
    Trial Courts Denial of
    Motion to Sever the indictment

IN the respondents answer they

Stated that the claim to the state
Supreme Court on direct appeal
was only an error under the
state criminal rules procedure. If
that was the case, as a direct
result of this error, this Petitioner
was denied his constitutional right
to a fair unprejudicial trial. But
when the trial court ordered this
Petitioner to answer all of these
Ficticous charges all at once
without a severance, it was
absolutely and totally impossible
for a jury to sort through all
of the testimony and weigh it
out Fairly, without being confused
by the abundance of testimony.
Even the trial judge admitted
that he was confused and
could'nt sort through the testimony
of the witnesses. (See, Exhibit-
D.). The Judge is a "professional"
and does this everyday and
was still confused. So how
could a layman jury be expected
sort through all of this testimony
at once and render a fair
and impartial verdict. Even
this Petitioner was confused

(11)

during the trial AS to the Abundance
of Allegations that he WAS Forced
to ANSwer to All At once. (See,
Exhibits - E).

    Also, See, <u>MᶜKAY V. STATE</u>, Del
supr ct. 382 A.2d, 263


## <u>Prayer For Relief</u>

    Wherefore, For the reASons
set Forth herein And in the documents
incorporated by reference in the
opening brief And Traverse,
Petitioner respectfully request
that this honorable Court grant
this writ of Habeas Corpus,
And reverse Petitioners Convictions.


DATed. Feb, 23ʳᵈ, 2007

KEVIN C. BrAthwAite
1181 PAddock Rd.
SmyrNA DE.
19977

claim that, the claim

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KEVIN C. BRATHWAITE, | § | |
| | § | No. 169, 2003 |
| Defendant Below, | § | |
| Appellant, | § | Court Below--Superior Court |
| | § | of the State of Delaware, in and |
| v. | § | for New Castle County in Cr. |
| | § | A. Nos. IN96-11-1973-1978, |
| STATE OF DELAWARE, | § | 1980-1987, 1989-1193. |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | Def. ID No. 9510007098 |

Submitted: March 24, 2006
Decided: July 10, 2006

Before **HOLLAND, BERGER** and **JACOBS**, Justices.

## O R D E R

This *10*ᵗʰ day of July, 2006, upon consideration of the parties' briefs, the

Superior Court's decision on remand, the parties' supplemental memoranda,

and the Superior Court record, it appears to the Court that:

(1)    In 1998, a Superior Court jury convicted the appellant, Kevin C.

Brathwaite, of multiple counts of unlawful sexual intercourse and related

sexual assaults.    The Superior Court sentenced Brathwaite to several

consecutive life sentences. On direct appeal, this Court affirmed.[1]

---

[1] *Brathwaite v. State*, 1999 WL 1090581 (Del. Supr.).

to self-representation. By decision dated December 7, 2005, the Superior

Court ruled that:

> Mr. Brathwaite's right of self-representation was not
> denied by the Court. Simply put, it was not properly
> presented to the Court in the first instance and the
> Court declined to consider the same. Mr. Brathwaite
> knew of that rejection as well as why, and did not
> choose to assert or pursue that right as required by
> the rules of this Court and/or the applicable law.

We review the Superior Court's decision de novo.[4]

(7) Brathwaite was indicted in 1996. On March 3, 1997, Brathwaite

filed a motion requesting "permission to exercise his constitutional right to

proceed pro se." In his motion, Brathwaite complained that his rights were

being violated, and that his efforts to bring several important issues to the

court's attention were being ignored. Brathwaite stated that he would be more

effective than his attorney, if allowed to represent himself.

(8) By memorandum dated March 7, 1997, the Superior Court

referred Brathwaite's motion to his counsel, David Facciolo, Esquire, for

"appropriate action." The March 7 referral memorandum advised:

> Super Ct. Crim. R. 47 provides that "[t]he Court will
> not consider pro se applications by defendants who
> are represented by counsel unless the defendant has

---

[4]*Stigars v. State*, 674 A.2d 477, 479 (Del. 1996).

3

(12)   The right to counsel, embodied in the Sixth Amendment to the United States Constitution, has as its corollary the right to proceed *pro se*.[7] In Delaware, the right to proceed *pro se* is specifically guaranteed by Article I, Section 7 of the Delaware Constitution.[8]

(13)   The right to counsel and the right to proceed *pro se* are mutually exclusive.[9] A defendant has no constitutional right to combine the two.[10] In Delaware, contrary to what was suggested by the Superior Court's referral memorandum in this case, a defendant seeking to assert the right to proceed *pro se* should *not* do so by seeking permission to participate with counsel in the defense. A motion to proceed *pro se* is properly "perfected" when filed with the court.

(14)   Before a defendant can exercise the right to proceed *pro se*, a court must determine that the defendant has knowingly and voluntarily

---

[7]*United States v. Peppers*, 302 F.3d 120, 129 (3d Cir. 2002) *cert. denied*, 537 U.S. 1062 (2002).

[8]*Stigars v. State*, 674 A.2d 477, 479 (Del. 1996).

[9]*Hooks v. State*, 416 A.2d 189, 198-99 (Del. 1980).

[10]*See In re Haskins*, 551 A.2d 65, 66 (Del. 1988) (holding that a defendant does not have a right to hybrid representation) (citing *Hooks v. State*, 416 A.2d 189, 197-99 (Del. 1980)).

5

privately with his new counsel, or in open court when questioned about Foley's representation. Under these circumstances, the only plausible explanation for Brathwaite's conduct is that he waived the right to proceed *pro se* in favor of exercising his constitutional right to counsel. [14]

(20)  We next consider Brathwaite's appeal from the denial of his motion for a new trial. The Court reviews the denial of a motion for a new trial for an abuse of discretion.[15]

(21)  After careful consideration of the parties' briefs, we find it manifest that the judgment of the Superior Court should be affirmed on the basis of the well-reasoned decision dated March 17, 2003. In that decision, the Superior Court applied the proper legal standard and concluded that Brathwaite failed to satisfy any of the requirements for receiving a new trial on the basis of newly discovered evidence. The Superior Court also correctly applied the settled standard governing ineffective assistance of counsel claims. Although Brathwaite now contends that he was not claiming that his counsel was ineffective, his motion expressly states that, "counsel's performance fell below

---

[14]*See Cain v. Peters*, 972 F.2d 748, 750 (7th Cir. 1992) (stating that "defendants forfeit self-representation by remaining silent at critical junctures before or during trial") *cert. denied*, 507 U.S. 930 (1993).

[15]*Blankenship v. State*, 447 A.2d 428, 433 (Del. 1982).

7

*EXhibi 1 - A*

## AT NO TIME PRIOR TO OR DURING TRIAL DID BRATHWAITE UNEQUIVOCALLY WAIVE HIS RIGHT TO COUNSEL AND REQUEST TO REPRESENT HIMSELF

Standard and Scope of Review

The right to self-representation in a criminal proceeding is a fundamental right under the Delaware and United States Constitutions, the denial of which is reviewed *de novo*. *Stigars v. State*, 674 A.2d 477, 479 (Del. 1996).

Argument

As an initial point of departure, Brathwaite's claim that the Superior Court violated his right to self-representation is procedurally barred. Brathwaite does not allege that he raised denial of self-representation as an issue upon direct appeal, nor has he argued in his opening brief that he asked trial counsel (who also represented him on direct appeal) to raise such issue and that counsel refused to do so. Post-conviction motions are not a substitute for direct appellate review.

> Postconviction relief is a collateral remedy which provides an avenue for upsetting judgments that otherwise have become final. It is not designed as a substitute for direct appeal. It is a matter of fundamental import that there be a definitive end to the litigable aspect of the criminal process.

*Flamer v. State*, 585 A.2d 736, 745 (Del. 1990). On this basis alone, this Court may properly refuse to consider an issue that Brathwaite now asserts became a point of contention a year-and-a-half prior to the start of his trial.

13

THOMAS A. FOLEY
ATTORNEY AT LAW
1326 KING STREET
WILMINGTON, DELAWARE 19801

ADMITTED IN DELAWARE
AND THE DISTRICT OF COLUMBIA

TEL. (302) 658-3077
FAX (302) 656-1993

December 7, 1998

Mr. Kevin Brathwaite, Inmate
Delaware Correctional Center
Smyrna Landing Road
Smyrna, Delaware 19977

Dear Kevin:

As you know, the Court sentenced you to life in prison, which we knew was already coming, based upon the jury's verdict.

Within 30 days, I will file a Notice of Appeal to the Delaware Supreme Court, directing that they order that transcripts be generated for the Appeal. It will take the Court Reporters approximately 60 - 90 days to generate transcripts.

Once the record is complete, The Delaware Supreme Court will set up a Briefing Schedule. I will send you a copy of the transcripts, at that juncture, and entertain any input you want to provide regarding appellate issues.

So long as I am your lawyer, I will ultimately decide which issues will be raised on appeal. I want you to know that I have no intention of raising on appeal, the issue about whether the Court erred in not allowing you to represent yourself, and/or participate as co-counsel. In my mind, that issue was waived, by allowing me to represent you as your counsel.

Even assuming that the issue was not waived, I cannot raise that issue, since I am your counsel, and consequently, lack standing to raise that particular issue.

Consequently, you can either represent yourself on Direct Appeal, which I do not recommend, or alternatively let me represent you on Direct Appeal. In the event your convictions are affirmed, you will still have the opportunity, via rule 61, raise that issue in seeking Postconviction Relief.

Page Two
RE: Kevin Brathwaite
December 7, 1998

In other words, the issue is preserved. It is simply an issue that I am not going to raise on Direct Appeal because I was your counsel, and it would not make sense for me to argue that the Trial Court erred in not allowing you to represent yourself.

In the event you feel more comfortable representing yourself on Direct Appeal, please advise.

Under any scenario, the Direct Appeal process will take approximately 9-12 months. If we lose the Appeal, you will have 3 years from that date, to file for Postconviction Relief under Rule 61.

Sincerely,

Thomas A. Foley

TAF:mdf

*Exhibit - C*

LAW OFFICE
OF

# JEROME M. CAPONE

ATTORNEY-AT-LAW

TOWNE CENTER, SUITE 200                                  TELEPHONE (302) 654-3260
4 EAST 8TH STREET                                        TELECOPIER (302) 655-5358
WILMINGTON, DELAWARE 19801

December 14, 2002

The Honorable Charles H. Toliver, IV
Superior Court
500 North King Street
Wilmington, DE 19801

**RE: State v. Kevin Brathwaite; ID No. 9510007098**

Dear Judge Toliver:

Please accept this letter in support of Mr. Brathwaite's Motion for Post
Conviction Relief.

One of the victims in this case, Salan Chapman, testified at trial that she knew the
defendant casually. She further testified that she had never been to his apartment and
never engaged in any sexual activity with him prior to the alleged rape which occurred in
January 1996.

One of Mr. Brathwaite's contentions is that he should be entitled to a new trial due to
newly discovered evidence, which would serve to discredit the testimony of Ms.
Chapman. This comes primarily in the form of testimony of Sonia Byers Holly. She
testified that she had been involved in an intimate relationship with Mr. Brathwaite prior
to his arrest. She testified that one day when she was at his apartment, she saw a picture
of a naked woman that had obviously been taken inside the apartment. She asked him
about the picture and he said it was a picture of Salan Chapman, one of the victims in this
case. The photograph in question was available at the post conviction hearing but not at
trial. Mr. Brathwaite testified that it was mailed to him along with a nasty anonymous
note while he was incarcerated. He testified that he believed Salan Chapman sent it to
him.

Ms. Chapman denied that she was the woman in the picture and denied mailing the picture to Mr. Brathwaite. A handwriting expert was unable to determine whether she wrote the letter.

In any event, the evidence provided by Ms. Holly is important because it contradicts the trial testimony, and thus the credibility, of Ms. Chapman, one of the State's most important trial witnesses. Though Ms. Holly was interviewed by Mr. Brathwaite's trial attorney prior to trial, she lied about her involvement with Mr. Brathwaite because she was in it might jeopardize her job in Municipal Court. After Mr. Brathwaite was convicted, she came forward.

The Defendant submits that her testimony fits the criteria of admissible newly discovered evidence since it could not have been discovered prior to trial with due diligence. Moreover, the evidence is not merely cumulative or impeaching; and the evidence probably would have changed the outcome of the trial. *State v. Hamilton*, Del. Supr., 406 A2d 879 (1974).

Also admitted into evidence at the post conviction hearing was an affidavit of Sir Olden Hue Chapman. According to his affidavit, he is the cousin of Salan Chapman. His affidavit stated that he had visited Mr. Brathwaite's apartment on 3 occasions prior to his arrest to find Salan Chapman there in her nightgown. He also stated that that there were times when he would call Mr. Brathwaite's apartment in the middle of the night and the phone was answered by Ms. Chapman. This evidence was also important because it contradicted the trial testimony of Ms. Chapman. Mr. Brathwaite contends that his trial attorney was ineffective in failing to call Mr. Chapman as a defense witness.

Finally, there is the issue of additional exculpatory evidence which Mr. Brathwaite testified were mailed to him anonymously. These were additional photographs of Ms. Chapman and other letters. However, Mr. Brathwaite testified that these items were confiscated by Captain Belanger and were thus unavailable for the hearing. Captain Belanger denied these allegations.

Based on the foregoing, the Defendant respectfully submits that his motion should be granted.

Respectfully submitted,

Jerome M. Capone

Cc: Donald Roberts, Esq.
    Kevin Brathwaite

State v. Kevin Brathwaite                CondenseIt!™                August 26, 1998

---

**Page 109**

1    THE COURT: Do you have any questions for me?
2    THE DEFENDANT: No, Your Honor.
3    THE COURT: And have you had any drugs and/or
4    alcohol within the last 48 hours?
5    THE DEFENDANT: No, Your Honor.
6    THE COURT: Are you now or have you been
7    within the past two years a patient in a mental
8    institution or under the care of a psychologist or
9    psychiatrist?
10    THE DEFENDANT: No, Your Honor.
11    THE COURT: Is anyone forcing you to elect one
12    or the other?
13    THE DEFENDANT: No, Your Honor.
14    THE COURT: What is your decision as to
15    whether you will or will not testify?
16    THE DEFENDANT: I wish to testify.
17    THE COURT: All right, sir. I find it a
18    knowing and voluntary decision.
19    Thank you. You may sit down.
20    MR. FOLEY: If I can briefly make a record.
21    And again, I understand the Court will table this.
22    Some of these will not be objected to. Does the Court
23    have the reindictment in front of it?

---

**Page 110**

1    THE COURT: I have the indictment filed
2    November 12. Has there been a subsequent indictment?
3    MR. FOLEY: Just at the top, it says
4    reindictment.
5    THE COURT: I have the indictment.
6    MR. PEDERSEN: It says November 12.
7    THE COURT: It does say reindictment,
8    Mr. Foley, yes, I'm sorry, at the very top.
9    MR. FOLEY: Defense would move to dismiss
10    Counts I, II and III related to Donna Miller.
11    MR. PEDERSEN: State has no objection.
12    THE COURT: Granted.
13    MR. FOLEY: Count IV through Counts IX and X,
14    they're counts of unlawful sexual penetration third
15    degree related to Salan Chapman. There's no testimony
16    to that effect. She said she couldn't recall whether
17    he had put his fingers in her private parts.
18    And there was no testimony I believe by
19    Detective Donovan in the 3507 statement as to that
20    either. So I think those should be kicked as well.
21    MR. PEDERSEN: I disagree with Mr. Foley. I
22    believe Detective Donovan did, in fact, testify that
23    Salan Chapman told him that the defendant put his

---

**Page 111**

1    fingers inside of her vagina. And under 3507, those
2    statements are affirmative evidence, and I believe
3    those two counts should remain in the indictment.
4    THE COURT: Do you have any response to that?
5    MR. FOLEY: It's a question of recollection,
6    Your Honor. Going through my notes, I didn't remember
7    him saying anything about fingers. A lot of other
8    stuff, but not fingers.
9    THE COURT: I will have to -- Let's submit
10    them to the jury. I remember testimony about fingers,
11    but I'm confused now as to which complaining witness it
12    was.
13    MR. FOLEY: Okay, Your Honor.
14    THE COURT: So I'll deny as to that.
15    MR. FOLEY: She definitely said she couldn't
16    recall, and I think Mr. Pedersen agrees that's what she
17    said under oath.
18    MR. PEDERSEN: That's correct. I have no
19    quarrel with what Mr. Foley is saying there. I just
20    have a quarrel with what he says was Detective
21    Donovan's testimony.
22    MR. FOLEY: Moving forward, the Defense moves
23    to dismiss the kidnapping charge, Roman Numeral 25.

---

**Page 112**

1    And I submitted to the Court two cases, and I'll spell
2    them for the record: Kornegey, K-o-r-n-e-g-e-y, v.
3    State and Webber v. State. I'm not going to argue what
4    the case law is until later, but that's pretty self-
5    evident from the cases.
6    MR. PEDERSEN: My response would be this is
7    different than those cases. The victim in this case,
8    Shana Osbourne, was moved from room to room within the
9    apartment, not released unharmed prior to trial, as
10    rape is considered harm under the case law and under
11    the statute. And therefore, I believe the kidnapping
12    first charge should remain.
13    MR. FOLEY: The legal issue, I think,
14    Your Honor, is whether or not she -- whether the
15    restraint was part and parcel of the rape, or was it
16    independent. That's really what the cases go to. And
17    they're, again, self-evident. The Court can look at
18    those cases and rule.
19    THE COURT: I understand the State's
20    distinction.
21    MR. FOLEY: Your Honor, there's three weapon
22    counts, 26, 27 and 28.
23    THE COURT: There simply is no gun.

---

**State v. Kevin Brathwaite**     Condenselt!™     **August 27, 1998**

Page 41

1 of them said they were very frightened of you?
2    A. That's what they said.
3    Q. You don't recall -- I withdraw that.
4      Let's talk about each one of them individually
5 now.
6      You agree with me that even if we are to
7 believe what you have testified to, you tricked Carmen
8 Rodriguez into having sex with you?
9    A. Yes, I did.
10    Q. You tricked her into giving consent and having
11 sex with you?
12    A. Right.
13    Q. You promised her coke and didn't deliver?
14    A. Right.
15    Q. And you went there, as you testified, with
16 that specific purpose?
17    A. Right.
18    Q. You also testified yesterday the first time
19 you met Carmen Rodriguez, you're in the store
20 innocently buying laundry detergent, and Carmen
21 Rodriguez approached you and said, "By the way, can I
22 smoke crack in your apartment?"
23    A. No, I didn't. I was on the way to the store

Page 42

1 to buy soap powder.
2    Q. And on the way to the store, she approached
3 you and said, "Can I get high in your apartment?"
4    A. Right.
5    Q. And you said, "Sure. Why not"?
6    A. To that extent.
7    Q. And you said you had absolutely no ulterior
8 motive at that time?
9    A. No, I didn't.
10    Q. Did you say, "In exchange for me letting you
11 get high in the apartment, why don't you let me have
12 sex?"
13    A. No.
14    Q. You like to have sex with coke whores?
15    A. Right.
16    Q. Why not then and there?
17    A. I didn't have time.
18    Q. You didn't have time?
19    A. No.
20    Q. She had time to get high, but you didn't have
21 time to have sex?
22    A. I had to do my laundry.
23    Q. Did you say, "Come back in a few hours after I

Page 43

1 get off of work and we'll have sex"?
2    A. No, I didn't.
3    Q. You told the police that the second time --
4 Excuse me. You told us here yesterday, the second time
5 you picked her up, drove her around, come back home,
6 she goes into the bathroom and comes out, bra and
7 panties, and it's party time. Right?
8    A. Right. She went in the bathroom and she was
9 smoking coke in the bathroom. I didn't know she was,
10 at first.
11    Q. But she comes out, bra and panties, and it's
12 time for the other half of the bargain?
13    A. Right.
14    Q. It's time for the sex?
15    A. Right.
16    Q. And she's already high now. She comes out,
17 bra and panties, and you guys start to have sex.
18 Right?
19    A. Right.
20    Q. I think you testified yesterday you started in
21 the living room, but shortly after that, she decided
22 that the couch was too hard, so it's time to go in the
23 bedroom?

Page 44

1    A. Right.
2    Q. That's just vaginal sex at that time?
3    A. Right.
4    Q. And you're sure about that?
5    A. Pretty sure.
6    Q. You don't have any problem keeping the
7 different crack whores in mind, do you, when you're
8 testifying?
9    A. It's kind of confusing, everything coming at
10 once.
11    Q. But you have a pretty good recollection of
12 meeting Carmen Rodriguez and everything else?
13    A. Yeah.
14    Q. So you have vaginal sex with her in the living
15 room for a few minutes?
16    A. Right.
17    Q. Move right into the bedroom, where it's more
18 comfortable, and that's where the sex takes place?
19    A. Right.
20    Q. Everything is cool?
21    A. Yeah.
22    Q. You don't blindfold her. Right?
23    A. No.

**Jeanne Cahill, Superior Court Reporter**     Page 41 - Page 44

Certificate of Service

I Kevin C. Brathwaite, States that
I have cause a copy of the
Attached Traverse to Answer
to be delivered to the Following
party by way of U.S. Postal
Service.

Gregory E. Smith, ESQ
Atty Gen office
820 N- French St
Wilmington DE.
19801

Kevin C. Brathwaite
1181 Paddock Rd.
Smyrna DE.
19977

date - 2-23-07

I/M KEVIN C. BRATHWAITE
SBI# 315824 UNIT:
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

PETER DALLEO, Clerk
Office OF THE Clerk
U.S. DISTRICT COURT   LOCKboX ~ 19
844 N. KING ST
WILMINGTON DE
19801

U.S.MS
X-RAY