## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KEVIN C. BRATHWAITE,           )
                               )
          Petitioner,          )
                               )
     v.                        )          Civ. A. No. 06-472-GMS
                               )
PERRY PHELPS, Warden, and      )
ATTORNEY GENERAL OF THE        )
STATE OF DELAWARE,             )
                               )
          Respondents.[1]      )

––––––––––––––––––

Kevin C. Brathwaite.  *Pro se* petitioner.

Gregory E. Smith, Deputy Attorney General, Delaware Department of
Justice, Wilmington, Delaware.  Attorney for respondents.

––––––––––––––––––

### MEMORANDUM OPINION

_____ O D 16 _____, 2009
Wilmington, Delaware

––––––––––––––––––

[1]Warden Perry Phelps assumed office in January, 2008, replacing Warden Thomas
Carroll, an original party to this case. *See* Fed. R. Civ. P. 25(d)(1).

Sleet, Chief District Judge

# I. INTRODUCTION

Petitioner Kevin C. Brathwaite ("Brathwaite") is an inmate at the James T. Vaughn Correctional Center in Smyrna, Delaware. Brathwaite filed the pending petition for a writ of habeas corpus ("petition") pursuant to 28 U.S.C. § 2254. (D.I. 1.) The State filed an answer in opposition, and Brathwaite filed a reply. (D.I. 18; D.I. 22; D.I. 23.) For the reasons that follow, the court will dismiss Brathwaite's petition in its entirety without an evidentiary hearing.

# II. FACTUAL AND PROCEDURAL BACKGROUND

In 1998, a Delaware Superior Court jury convicted Brathwaite of six counts of first degree unlawful sexual intercourse, two counts of second degree unlawful sexual intercourse, seven counts of third degree unlawful sexual intercourse, one count of third degree unlawful sexual penetration, two counts of third degree assault, and one count of aggravated act of intimidation. These convictions stemmed from Brathwaite's sexual assaults on three separate women. The Superior Court sentenced Brathwaite to several consecutive life sentences, and the Delaware Supreme Court affirmed Brathwaite's convictions and sentences. *See Brathwaite v. State*, 2003 WL 1410155 (Del. Super. Ct. Mar. 17, 2003).

In 1999, Brathwaite filed a motion for new trial based on newly discovered evidence, along with a related claim of ineffective assistance of counsel. The Superior Court appointed Jerome Capone, Esquire, to represent Brathwaite, who then supplemented the motion for new trial with a claim that the trial court had violated Brathwaite's constitutional right to represent himself. On March 17, 2003, the Superior Court denied the motion for new trial, holding that Brathwaite had not met the standards for newly discovered evidence. *Brathwaite*, 2003 WL

2

1410155, at *4. As for Brathwaite's ineffective assistance of counsel claim, the Superior Court treated the claim as a motion for post-conviction relief pursuant to Superior Court Criminal Rule 61 because the motion was not filed withing the seven day time period prescribed for new trial motions premised on grounds other than newly discovered evidence. *Id.*; *See* Del. Super. Ct. Crim. R. 33. The Superior Court analyzed the claim pursuant to *Strickland*, and held that Brathwaite failed to satisfy the performance prong of the *Strickland* test because he did not demonstrate that trial counsel's assistance was unreasonable. *Id.* at *5. The Superior Court did not address the additional argument regarding the alleged violation of Brathwaite's constitutional right to self-representation.

Brathwaite appealed, and also requested permission to proceed *pro se*. The Delaware Supreme Court granted Brathwaite leave to represent himself, but remanded the case so that the Superior Court could decide whether he had been denied the right to self-representation during his trial. On remand, the Superior Court reviewed Brathwaite's self-representation claim under both Rule 33 and Rule 61 standards, and held that Brathwaite was not entitled to relief on this claim because his right to self-representation had not been denied. The Delaware Supreme Court affirmed that decision as well as the Superior Court's denial of the motion for new trial based on newly discovered evidence and its denial of Brathwaite's ineffective assistance of counsel claim. *Brathwaite*, 2006 WL 1911132, at *2-3.

Brathwaite timely filed the instant § 2254 petition, and the State filed an answer requesting the court to deny the petition in its entirety. (D.I. 18.) Brathwaite filed a reply and an amendment to the reply. (D.I. 22; D.I. 23.) His petition is ready for review.

3

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

"to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206

(2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may

consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas

petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see*

*Woodford,* 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>     (ii) circumstances exist that render such process ineffective to protect the rights of the
>         applicant.

4

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at \*2 (D. Del. Dec. 22, 2000). "'Fair presentation' of a claim means that the petitioner 'must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004)(citing *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Nevertheless, an unexhausted claim is procedurally defaulted. *Lines,* 208 F.3d at 160. Federal courts may not consider the merits of a procedurally defaulted claim unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claim. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor

5

external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

## C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250

6

F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

A state court's decision is "contrary to" Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases." *Williams v. Taylor*, 529 U.S. 362, 405(2000). In turn, a state court's decision is an "unreasonable application of" Supreme Court precedent if an objective evaluation of the state court decision on the merits reveals that the state courts did not reasonably apply the Supreme Court standard to the facts of the petitoiner's case. *See* 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 412-13; *Matteo v. Sup't, SCI Albion*, 171 F.3d 877, 891 (3d Cir. 1999). This analysis involves determining "whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified. If so, then the petition should be granted." *Matteo,* 171 F.3d at 888. Although the decisions of state and lower federal courts are relevant in assessing the reasonableness of a state court's decision, "cases not decided by the Supreme Court do not serve as the legal benchmark against which to compare the state decision." *Fischetti v. Johnson*, 384 F.3d 140, 149 (3d Cir. 2004).

When reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This

7

presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Brathwaite asserts the following six claims for relief in his petition: (1) the trial court violated his Sixth Amendment right to represent himself; (2) appellate counsel provided ineffective assistance by failing to raise the self-representation issue on direct appeal; (3) the trial court violated his right to due process by failing to address pre-trial motions; (4) the Superior Court violated Brathwaite's due process rights during the May 21, 2002 evidentiary hearing on the Rule 33 motion for new trial; (5) the trial court violated his right to due process by denying his pre-trial motion to sever the indictment; and (6) the trial court violated his right to due process by not dismissing two counts of the indictment that did not contain the phrase "without her consent."

### A. Claim one: the trial court violated Brathwaite's right to self-representation

Brathwaite was represented by two different attorneys during his trial and direct appeal. Mr. David Facciolo, Esquire represented Brathwaite during the majority of the pre-trial stage, from the spring of 1996 until December 3, 1997. In December 1997, Facciolo filed a motion to withdraw as counsel, because he and Brathwaite "disagreed on several matters involving trial strategy." (D.I. 25, Affidavit by Facciolo dated August 25, 2005) The Superior Court granted Facciolo's motion to withdraw as Brathwaite's counsel on December 3, 1997, and appointed Mr. Thomas Foley, Esquire to represent Brathwaite on December 15, 1997. Foley assumed responsibility for Brathwaite's defense and continued his representation throughout Brathwaite's trial and subsequent appeal to the Delaware Supreme Court.

8

In claim one, Brathwaite contends that he unequivocally asserted his right to self-representation in March 1997 while Facciolo was acting as his counsel, and that the trial court violated his Sixth Amendment rights by failing to address his request and grant his motion. The State contends that the Superior Court did not violate Brathwaite's right to self-representation because he did not unequivocally invoke his right to self-representation in March 1997. Alternatively, even if Brathwaite did unequivocally assert his right to proceed *pro se*, the State argues that he waived that right when he accepted Foley as his new counsel in December 1997 without providing any further indication that he still wanted to represent himself.

The record reveals that the Delaware Supreme Court denied the instant claim on the merits. Specifically, Brathwaite filed a motion for new trial after his conviction, asserting three claims for relief: newly discovered evidence, ineffective assistance of counsel, and a denial of his right to self-representation. The Superior Court denied the motion, but only addressed the first two issues. Brathwaite appealed, and the Delaware Supreme Court remanded the case to the Superior Court so that it could address the self-representation issue. On remand, the Superior Court held that Brathwaite's right to self-representation had not been violated, and the Delaware Supreme Court affirmed that decision.

Given the Delaware Supreme Court's adjudication of claim one,[2] the court can only grant habeas relief if the Delaware Supreme Court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or involved an unreasonable

_____

[2]Even though the Delaware Supreme Court did not cite Supreme Court precedent in reaching its decision, the authorities cited therein were consistent with the applicable Supreme Court precedent. Therefore, the Delaware Supreme Court adjudicated the merits of claim one for the purposes of § 2254(d). *See Thomas v. Carroll*, - F.3d -, 2009 WL 2998957 (3d Cir. 2009).

9

determination of facts.

The "clearly established" Supreme Court precedent regarding a criminal defendant's right to represent himself is *Faretta v. California*, 422 U.S. 806 (1975). In *Faretta*, the Supreme Court held that a defendant in a state criminal case has a constitutional right to proceed without counsel when he voluntarily, knowingly, and intelligently chooses to do so, and the state may not constitutionally force a lawyer upon him. *Faretta v. California*, 422 U.S. 806, 834-35 (1975); *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938). Although a defendant's right to represent himself is fundamental in nature, representation by counsel is the standard, not the exception, and there is a strong presumption against the waiver of the right to counsel. *Martinez v. Court of Appeal of California*, 528 U.S. 152, 161 (2000); *Patterson v. Illinois*, 487 U.S. 285, 307 (1988).

"The Sixth Amendment embodies two competing rights because exercising the right to self-representation necessarily means waiving the right to counsel." *Buhl v. Cooksey*, 233 F.3d 783, 789 (3d Cir. 2000). Consequently, unlike a criminal defendant's right to counsel, which stays in effect until waived, a defendant's right to self-representation is not triggered until it is clearly, unequivocally, and timely asserted. *Faretta*, 422 U.S. at 835; *see Williams*, 529 U.S. at 412-13 (in the absence of clear direction from the Supreme Court as to when a *Faretta* request is untimely, other courts are free to set the timing element as long as their standards comply with *Faretta*'s holding that a request "weeks before trial" is timely). Once a defendant unequivocally and timely asserts his constitutional right to self-representation, the trial court must conduct a colloquy ("*Faretta* inquiry") with the defendant to determine that his waiver of his right to counsel is knowing and voluntary, and inform him of the nature of the charges against him, the possible penalties, and the dangers of self-representation. *Buhl*, 233 F.3d at 791. "This

10

obligation [to conduct such a colloquy] arises under the Constitution, and it applies to state, as well as federal judges." *Id.* at 792.

"The right to self-representation, then, is waived if not asserted, while the right to counsel is not. Since the right of self-representation is waived more easily than the right to counsel at the outset, before assertion, it is reasonable to conclude that it is more easily waived at a later point, after assertion." *Brown v. Wainwright*, 665 F.2d 607, 611 (11th Cir. 1982). While the United States Supreme Court has not explicitly considered whether a properly asserted *Faretta* right may be waived, or abandoned, through subsequent conduct, the Supreme Court has indicated that such a waiver may occur. For instance, in *Faretta*, the Supreme Court opined that "[a]n unwanted counsel represents the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution; for, in a very real sense, it is not his defense." *Faretta*, 422 U.S. at 834. And, in *McKaskle v. Wiggins*, 465 U.S. 168, 182-84 (1984), the Supreme Court opined that even after a defendant has been granted the right to proceed *pro se* and standby counsel has been appointed, he may waive his *Faretta* rights, explaining that "[o]nce a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." Notably, under Third Circuit law, a defendant who has unequivocally asserted his right to self-representation may thereafter forfeit that right by deliberately engaging in serious and

11

obstructionist misconduct, vacillating over his representation, or manipulating the proceedings.[3]
*Buhl v. Cooksey*, 233 F.3d 783, 800 (3d Cir. 2000).

In this case, the Delaware Supreme Court held that Brathwaite's right to self-representation was not violated. Even though the Delaware Supreme Court did not specifically apply *Faretta* and its progeny in its decision, the federal and state cases cited therein refer to *Faretta* and properly articulate the parameters of a defendant's right to self-representation. Consequently, the court concludes that the Delaware Supreme Court's decision was not contrary to Supreme Court precedent. *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008)(Supreme Court of Pennsylvania's decision was not "contrary to" clearly established Federal law because appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent).

---

[3]The Third Circuit has explained the distinction between waiver, waiver by conduct, and forfeiture of a constitutional right. "A waiver is an intentional and voluntary relinquishment of a known right," usually by an affirmative verbal request. *United States v. Goldberg*, 67 F.3d 1092, 1099 (3d Cir. 1995). For example, in order to be valid, a defendant's waiver of the right to counsel must be affirmative and on the record. *See Michigan v. Jackson*, 475 U.S. 625, 633 (1986). "At the other end of the spectrum is forfeiture . . . which results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." *Goldberg*, 67 F.3d at 1099. A defendant who is abusive toward his attorney may forfeit the right to counsel. *Id.* "Finally, there is a hybrid situation (waiver by conduct) that combines elements of waiver and forfeiture." *Id.* For instance, once a defendant has been warned that he will lose his attorney by engaging in dilatory tactics, any misconduct thereafter may be treated as a implicit request to proceed *pro se* and a "waiver by conduct" of the right to counsel. *Id.*

In Brathwaite's case, the Delaware Supreme Court explained that a "defendant may waive the right to self-representation after asserting it. Waiver may be established by a defendant's failure to reassert the request, if it would be futile to do so." *Brathwaite*, 2006 WL 1911132, at *2. The Delaware Supreme Court ultimately opined that Brathwaite's failure to renew his request to proceed *pro se* constituted a waiver of his right to self-representation through acquiescence to the appointment of new counsel and the failure renew his request to proceed *pro se.* This type of waiver appears to fall within the Third Circuit's "waiver by vacillation" category. *See Buhl*, 233 F.3d at 800-802.

The court's inquiry is not over, however, because it must also determine whether the Delaware Supreme Court's decision involved an unreasonable determination of facts, or an unreasonable application of Supreme Court precedent to Brathwaite's case. The court will perform this review within the three-pronged inquiry established by the Third Circuit for analyzing claims alleging a violation of the right to self-representation. *See Buhl*, 233 F.3d at 791. First, the court must determine if Brathwaite clearly and unequivocally asserted his right to self-representation, thereby triggering the trial court's obligation to conduct a *Faretta* inquiry. Second, the court must determine if the trial court's *Faretta* inquiry was adequate. And finally, the court must consider what impact, if any, Brathwaite's subsequent conduct had upon his previously asserted right to self-representation.[4] *See Buhl*, 233 F.3d at 791-800; *Peppers*, 302 F.3d at 132; *see also Dorman v. Wainwright*, 798 F.2d 1358, 1366 (11th cir. 1986).

### 1. Did Brathwaite adequately assert his right to self-representation?

The Delaware Superior Court docket indicates that Brathwaite filed eight *pro se* documents in the time period extending from March to May 1997; these motions and letters were filed more than one year before trial. (D.I. 25.) Brathwaite contends that he clearly invoked his right to self-representation in these documents. The State disagrees, asserting that "Brathwaite's references to self-representation in March 1997 by their very nature were ambiguous at best, and overtly manipulative at worst. Brathwaite made nothing clear but that he did not want to be represented by Facciolo." (D.I. 18, at p. 14.)

---

[4]In *Peppers,* the Third Circuit identified an additional requirement that a trial court must assure itself that the defendant is competent to stand trial. *Peppers*, 302 F.3d at 132. However, because the record does not indicate any question as to Brathwaite's competency to waive his right to trial, the court has no reason to address this prong.

13

On remand for Brathwaite's motion for new trial, the Superior Court agreed with the

State's argument and held that Brathwaite did not unequivocally assert his desire to proceed *pro*

*se* because he did not properly present the request to the trial court in the manner required by

Delaware Superior Court Criminal Rule 47. (D.I. 1, *Brathwaite v. State*, No.169,2003, Response

to Order of Remand, at p. 9.); *see* Del. Super. Ct. Crim. R. 47 (the court will not consider *pro se*

applications by defendants who are represented by counsel unless the defendant has been granted

permission to participate with counsel in the defense). The Superior Court reviewed

Brathwaite's eight *pro se* filings, and opined,

> [b]ecause Mr. Brathwaite knew that his motion had not been acted upon by the Court as
> well as why, and proceeded with Mr. Foley's representation without further complaint
> after discussing the matter with Mr. Foley, he voluntarily elected to continue to exercise
> his right to be represented by appointed counsel as guaranteed by the Sixth Amendment
> of the U. S. Constitution and Article I, § 7 of the Delaware State Constitution. That
> conclusion is buttressed by the fact that Mr. Brathwaite, by the number of filings with and
> without counsel, knew how to get the Court's attention and has shown no reticence in
> doing exactly that for whatever reason. Consequently, the most that the undersigned can
> conclude is that Mr. Brathwaite made a request to proceed *pro se*, that he failed to perfect,
> which under the circumstances cannot be deemed to have been unequivocal. No other
> conclusion is viable.

(D.I. 1, *Brathwaite v. State*, No.169,2003, Response to Order of Remand, at pp. 10-11) "Simply

put, [the self-representation request] was not properly presented to the Court in the first instance

and the Court declined to consider the same. Mr. Brathwaite knew of that rejection as well as

why, and did not choose to assert or pursue that right as required by the rules of this Court and/or

the applicable law." (D.I. 1, Response to Order of Remand in *Brathwaite v. State*, No.169,2003,

Dec. 7, 2005).

The Delaware Supreme Court affirmed the Superior Court's judgment that Brathwaite's

right to self-representation had not been violated. However, its decision was not premised on

14

Brathwaite's failure to "properly assert" his request to proceed *pro se* under Rule 47, but rather, on Brathwaite's subsequent abandonment of that request. In fact, the Delaware Supreme Court explicitly rejected the State's argument "that Brathwaite's motion to proceed *pro se* was equivocal on its face, and that it was 'clarified' by his subsequent motion to participate with counsel in the defense." *Brathwaite*, 2006 WL 1911132, at *2 n.5. The Delaware Supreme Court explained that, "[i]n Delaware, contrary to what was suggested by the Superior Court's referral memorandum in this case, a defendant seeking to assert the right to proceed *pro se* should not do so by seeking permission to participate with counsel in the defense. A motion to proceed *pro se* is properly 'perfected' when filed with court." *Id.* at *2. Consequently, the Delaware Supreme Court implicitly held that Brathwaite's assertion of his right to self-representation was unequivocal.

In reaching this conclusion, the Delaware Supreme Court described the March 1997 "motion to proceed *pro se*" as complaining "that [Brathwaite's] rights were being violated, [] that his efforts to bring several important issues to the court's attention were being ignored, [and that] []he would be more effective than his attorney, if allowed to represent himself." *Brathwaite v. State*, 903 A.2d 322 (Table), 2006 WL 1911132, at *1 (Del. July 10, 2006). The Delaware Supreme Court also stated that Brathwaite's motion requested "permission [for him to] exercise his constitutional right to proceed *pro se.*" *Id.* Pursuant to 28 U.S.C. § 2254(e)(1), the court accepts as correct the Delaware Supreme Court's factual findings regarding the contents of Brathwaite's motion(s),[5] and concludes that a reasonable person viewing Brathwaite's motion to

---

[5]Inexplicably, the State has not provided copies of these motions in the state court record. The State's description of the motions fails to constitute "clear and convincing" evidence rebutting the Delaware Supreme Court's findings. 28 U.S.C. § 2254(e)(1)(explaining that the

15

proceed *pro se* would not be able to say that Brathwaite did not request to represent himself.[6] *See Dorman v. Wainwright*, 798 F.2d 1358, 1366 (11th Cir. 1986)(a defendant is not required to "recite some talismanic formula hoping to open the eyes and ears of the court to his request" to invoke his *Faretta* right to self-representation."). Thus, the court concludes that the Delaware Supreme Court's holding regarding the unequivocal nature of Brathwaite's request involved a reasonable determination of facts and a reasonable application of *Faretta* and its progeny.

### 2. The trial court's failure to conduct a *Faretta* inquiry

It is undisputed that a trial court has a constitutional obligation to conduct a *Faretta* inquiry on a defendant's unequivocal and timely motion for self-representation. *Buhl*, 233 F.3d at 791. Pursuant to *Faretta*, a defendant who wishes to proceed *pro se* at trial "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835. A court is not required to follow any particular script in order to satisfy the *Faretta* inquiry requirement. *Iowa v. Tovar*, 541 U.S. 77 (2004). Nevertheless, in recognition of *Faretta*'s general requirement that a waiver of the right to counsel "ought not [be] accept[ed] . . . absent a penetrating and comprehensive examination of all the circumstances," *United States v. Stubbs*, 281 F.3d 118-19 (3d Cir. 2002), the Third Circuit has established a "useful framework"of fourteen model questions for a court to ask when a defendant asserts a request to proceed *pro se*.

---

**applicant** can rebut a state court's factual findings with clear and convincing evidence); *See* (D.I. 18, at pp.12-13.)

[6]In addition, because Brathwaite filed his motion to proceed *pro se* well before jury selection and the starting date of trial, Brathwaite's request to represent himself was timely. *Buhl*, 233 F.3d at 797-98.

16

*United States v. Peppers*, 302 F.3d 120, 135 (3d Cir. 2002); *United States v. Jones*, 452 F.3d 223, 234 (3d Cir. 2006).

In this case, given the trial court's complete failure to conduct a *Faretta* hearing on Brathwaite's unequivocal motion to proceed *pro se* filed in March 1997, its *Faretta* inquiry was clearly inadequate. *See Buhl*, 233 F.3d at 799. The court now turns to the third prong of the *Buhl* inquiry.

### 3. Did Brathwaite abandon his previously asserted right to self-representation?

As previously noted, it is well-settled that a defendant can waive the right to self-representation after asserting it. In Brathwaite's case, applying precedent from the Second, Third, and Seventh Circuits, the Delaware Supreme Court held that Brathwaite abandoned his right to self-representation by acquiescing to Foley's appointment as his counsel without either objecting to the appointment of counsel or renewing his request to represent himself. The Delaware Supreme Court reached this conclusion by comparing the numerous *pro se* documents filed by Brathwaite while he was represented by Facciolo against the complete absence of any *pro se* filings by Brathwaite while represented by Foley. The Delaware Supreme Court also noted that: (1) Brathwaite admitted he never told Foley he wished to proceed *pro se*; (2) Foley believed Brathwaite was satisfied with his representation; and (3) at least on one occasion, Brathwaite informed the trial court that he was satisfied with Foley's representation.

Brathwaite, however, contends that the Delaware Supreme Court unreasonably applied clearly established Federal law in holding that he abandoned (or waived) his right to self-representation by acquiescing to Foley's representation. First, citing to Delaware caselaw and *McKaskle*, Brathwaite alleges that the right to proceed *pro se* cannot be deemed waived unless

17

the record contains "a clear revocation by defendant of his previously asserted right." (D.I. 4, at p. 13.) The court summarily dismisses this argument as meritless. Although the *McKaskle* Court opined that "[p]articipation by counsel with a *pro se* defendant's express approval is, of course, constitutionally unobjectionable," the Court did not hold that express approval is necessary to effectuate a waiver of the right to self-representation. *McKaskle*, 465 U.S. at 182. In fact, the Supreme Court has never held that a defendant's waiver of his right to self-representation can only be effectuated by an explicit verbal or written retraction.

Second, Brathwaite argues that his acquiescence to Foley's representation did not amount to a waiver of his right to proceed *pro se* because Facciolo informed him in May 1997 that the trial court had denied his March request, and that any attempt to renew the issue would only anger the trial court. In essence, Brathwaite alleges that Facciolo's explanation prevented him from asserting a new request to represent himself.

It is generally accepted that a defendant "need not make fruitless motions" to "renew his request to represent himself . . . or forego cooperation with defense counsel" in order to avoid waiver of a previously asserted right to self-representation when the trial court **clearly denied** that request. *Brown v. Wainwright*, 665 F.2d 607, 612 (5th Cir. 1982)(emphasis added); *see Buhl*, 233 F.3d at 806; *United States v. Arlt*, 41 F.3d 516, 523 (9th Cir. 1994); *Raulerson v. Wainwright*, 732 F.2d 803, 809 (11th Cir. 1984). Conversely, at least two Federal Circuit courts have held that a defendant abandons his request to proceed *pro se* if the trial court has left the matter of self-representation open and the defendant fails to re-assert his request upon the appointment of new counsel. *Wilson v. Walker*, 204 F.3d 33, 38-9 (2nd Cir. 2000); *United States v. Jackson*, 304 Fed. Appx. 424 (6th Cir. 2008). Although the trial court in this case never

18

clearly denied Brathwaite's motion to proceed *pro se*, the court acknowledges that Brathwaite could have reasonably believed that the motion had been denied based on what Facciolo presumably told him.[7] The record supports this conclusion; Brathwaite's *pro se* filings stopped abruptly in May 1997 when Facciolo purportedly informed Brathwaite of the trial court's decision, thereby indicating that Brathwaite did, in some respect, feel foreclosed from reasserting his request for self-representation. Consequently, the court concludes that Brathwaite's failure to renew his request during Facciolo's period of representation should not be viewed as an abandonment of his right to self-representation.

However, the same cannot be said of Brathwaite's failure to either renew his request upon Foley's appointment of counsel or to object to that appointment. Foley represented Brathwaite for seven months prior to trial, and nothing in the record suggests any reason why Brathwaite would feel precluded from expressing his desire to proceed *pro se* to Foley[8] or from reasserting his right to self-representation during this time period. Moreover, during the trial, the trial judge asked Brathwaite on three separate occasions if he was satisfied with Foley's representation, and

---

[7]In his Rule 61 affidavit, Facciolo stated that "I know of nothing that I either communicated directly or indirectly, whether in person or by letter, to said client that was in any way misleading as to his representation status, whether that status was with counsel or *pro se*." (D.I. 25.)

[8]Foley's Rule 61 affidavit supports this conclusion. In it, Foley asserts

> Following my appointment, I have a vague recollection of asking Mr. Brathwaite about whether or not the Court ever addressed his Motion to Proceed *Pro Se*, during the time Mr. Facciolo represented him. My recollection is that Mr. Brathwaite was uncomfortable having Mr. Facciolo as his Public Defender, and was satisfied to have private counsel represent him, albeit in a Court-Appointed capacity. Hence, the issue about Mr. Brathwaite proceeding *pro se* was never raised again by him.

(D.I. 25, State's Supplemental Memorandum, Exh. B.)

19

he responded affirmatively. The trial judge also asked Brathwaite on at least two separate occasions if he had any questions, to which he responded negatively.[9]  Brathwaite's silence during these critical junctures (appointment of new counsel and colloquies with trial judge) supports the Delaware Supreme Court's conclusion that Brathwaite abandoned his previously asserted right to self-representation; once Facciolo withdrew as his counsel, Brathwaite changed his mind about representing himself and decided to exercise his right to counsel. Therefore, the court concludes that the Delaware Supreme Court reasonably determined the facts and reasonably applied *Faretta* and its progeny in holding that Brathwaite waived his previously asserted right to self-representation.

The court's inquiry is not over, however, because in holding that there was no violation of Brathwaite's right to self-representation, the Delaware Supreme Court never considered the trial court's failure to conduct a *Faretta* inquiry on Brathwaite's motion to proceed *pro se*. Citing *McKaskle*, Brathwaite contends that the trial court's failure to address his motion to proceed *pro se* constituted a *per se* structural error requiring automatic reversal. In essence, Brathwaite asserts that the failure to conduct a *Faretta* hearing amounts to the **wrongful denial** of the right to self-representation, thereby obviating the need for him to renew his previously asserted right in order to avoid a waiver.

_____

[9]While asking Brathwaite if he had any questions regarding "the 3507 procedure" or the "alternating of chief investigating officers," the trial judge asked if he was satisfied with counsel's representation. (D.I. 25, App. to State's Ans. Br. in *Brathwaite v. State*, No.169,2003, at B-46.) Brathwaite responded affirmatively. *Id.* Later on, while discussing Brathwaite's right to testify, the trial judge directly asked Brathwaite if he had any questions for him (the judge), to which Brathwaite responded, "No, Your Honor." *Id.* at B-49. And finally, while discussing the defense's motion to dismiss the kidnapping charge, the trial judge again asked Brathwaite if he concurred with Foley's decisions "thus far," and if he was satisfied with Foley's representation of him. Brathwaite responded affirmatively to both questions. *Id.* at B-50.

20

As explained by the *McKaskle* Court,

> since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to "harmless error" analysis. The right is either respected or denied; its deprivation cannot be harmless.

*McKaskle*, 465 U.S. at 177 n.8. The Supreme Court has repeatedly reaffirmed the principle that a court's improper denial the right to self-representation recognized in *Faretta* constitutes structural error requiring a new trial. *McKaskle*, 465 U.S. at 177 n.8; *see Arizona v. Fulmante*, 499 U.S. 279, 310 (1991)(issue was involuntary confession); *Neder v. United States*, 527 U.S. 1, 8 (1999)(jury instruction); *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006)(involving issue of Sixth Amendment right to choice of counsel). However, the Supreme Court has never held that the failure to conduct a *Faretta* hearing amounts to an improper denial of the right to self-representation.[10] In fact, the Supreme Court opinions acknowledging that an improper denial of the right to self-representation constitutes a structural error have involved situations where the trial court actually considered the request for self-representation and violated the right in some other manner; none of the decisions involved a situation where, as here, there simply was no *Faretta* inquiry and no clear denial of a request to proceed *pro se. See, e.g., McKaskle*, 465 U.S.

---

[10]Of the four cases cited, only *McKaskle* actually involved a violation of the right to self-representation; the other three Supreme Court cases articulating the rule that a *Faretta* violation constitutes structural error have merely asserted the rule when discussing a possible structural error resulting from the violation of some other constitutional right. And, although *McKaskle* actually involved a defendant's right to self-representation, the structural error in that case arose from stand-by counsel's interference with the *pro se* defendant's control of his case, not from the trial court's *Faretta* inquiry on the request for self-representation. In addition, the violation of the defendant's right to self-representation in *Faretta* did not result from the trial court's failure to conduct any inquiry, or even an incomplete inquiry; rather, the constitutional violation arose after the trial court's inquiry, when the trial court forced Faretta to accept a state appointed public defender against his will. *Faretta*, 422 U.S. at 835-36.

168; *Faretta*, 422 U.S. at 834-36.

Because the Supreme Court has never faced the precise issue presented here, the Delaware Supreme Court's decision was not contrary to clearly established Federal law. *See Thomas*, 2009 WL 2998957. However, determining if the Delaware Supreme Court's decision was an unreasonable application of *Faretta* and its progeny is a closer question. In the absence of clearly established Supreme Court precedent governing the precise issue in this case, the court must "use as [its] point of departure the specific holdings of the Court's decisions. When assessing whether the state court acted reasonably in applying or refusing to apply that precedent, [the court] must be mindful that the issue is whether Supreme Court law "dictated" a result in [the instant] case, or whether the circumstances presented here were "closely analogous" to those that formed the basis of earlier high court decisions. *Fischetti v. Johnson*, 384 F.3d 140, 150-51 (3d Cir. 2004).

The circumstances of Brathwaite's case are not analogous to the circumstances forming the basis of the applicable Supreme Court precedents. Therefore, the court concludes that the Delaware Supreme Court's decision did not represent an unreasonable application of Supreme Court precedent. *See Wilkerson*, 412 F.3d at 454, 455. Nevertheless, despite the lack of analogous case law, Brathwaite could still be entitled to relief if the Delaware Supreme Court unreasonably extended a governing legal principle to a situation in which it should not have controlled, or unreasonably failed to extend such a principle to a situation in which it should have controlled. *Wilkerson*, 412 F.3d at 455; *Brinson v. Vaughn*, 398 F.3d 225, 232 (3d Cir. 2005); *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000). Although the Supreme Court has not fully explained the parameters of the "unreasonable extension" doctrine, the Third Circuit has advised

that "[t]he unreasonable extension doctrine still requires reference to a specific legal principle from the Supreme Court." *Wilkerson*, 412 F.3d at 455. Thus, the court must consider whether the Delaware Supreme Court unreasonably failed to equate the failure to conduct a *Faretta* inquiry with an improper denial of the right to self-representation and, therefore, unreasonably failed to apply *McKaskle*'s structural error rule to Brathwaite's case.

In *McKaskle*, the Supreme Court explained that the primary focus "[i]n determining whether a defendant's *Faretta*'s rights have been respected . . . must be on whether the defendant had a fair chance to present his case his own way." *McKaskle*, 465 U.S. at 177. And, even though *Faretta* requires a defendant to assert his request for self-representation "weeks before trial," the Supreme Court has never set out any fixed time period for the holding of a *Faretta* inquiry. *See Nelson v. Alabama*, 292 F.3d 1291 (11th Cir. 2002). The Supreme Court's failure to impose a timing requirement for a *Faretta* inquiry provides a reasonable basis for concluding that a trial court's failure to conduct a *Faretta* inquiry on an unequivocal request to proceed *pro se* will not, on its own, constitute an improper denial of the right to self-representation. Rather, the failure to conduct a *Faretta* inquiry will only result in an improper denial of the right if the absence of the *Faretta* inquiry robbed the defendant of a fair chance to present his case in his own way. The three-pronged test articulated in *Buhl* supports this interpretation, because the sufficiency of the *Faretta* inquiry is only one of three factors to consider in determining if a defendant's right to self-representation was violated; one main factor to be considered is whether the defendant waived his previously asserted right to proceed *pro se* through his conduct.

In this case, the record reveals that the trial court's failure to conduct a *Faretta* inquiry did not prevent Brathwaite from presenting his case his own way. For instance, Brathwaite filed

his motion to proceed *pro se* in March 1998, and eight months later the trial judge held an office conference on November 18, 1997 to consider the status of other various pending motions. Although the trial court did not consider the motion to proceed *pro se*, the trial judge set the trial date for January 13, 1998, and also ordered "defendant to submit motion to withdraw with the caveat that Mr. Facciolo will continue his representation until motions are decided." (D.I. 25, Del. Super. Ct. Dkt. Entry No. 67.) On December 3, Facciolo filed a motion to withdraw, and his Rule 61 affidavit states that the reason he moved to withdraw was that he and Brathwaite disagreed over trial strategy. Consequently, even though a *Faretta* inquiry never occurred, Facciolo's motion to withdraw in some small manner informed the trial court about the basis for Brathwaite's dissatisfaction with Facciolo. The trial court granted that motion on December 15, 1997, and the trial judge appointed Foley to represent Brathwaite. When the trial court replaced Facciolo with Foley, Brathwaite did not object. Foley's motion to continue was granted. Brathwaite posted bail in February 1998, and he was released on home confinement. After several more continuances, Brathwaite's trial was held in August 1998. During this entire seven month pre-trial period, Brathwaite did not indicate any dissatisfaction with Foley's representation or any desire to proceed *pro se*. Moreover, Brathwaite did not indicate any desire to proceed *pro se*, or inquire about his March 1997 motion to proceed *pro se*, during the several colloquies he had with the judge during his trial.

Based on this record, the court concludes that the absence of a *Faretta* inquiry did not prevent Brathwaite from presenting his case his own way; it appears he simply had a change of heart over the issue of self-representation and chose to proceed with Foley as his attorney. In reaching this conclusion, the court notes that it would have been preferable if the trial court had

conducted a *Faretta* hearing on Brathwaite's motion. For example, as aptly explained by Justice

Brennan's dissent in *Raulerson v. Wainwright*,

> Delay in holding a hearing after the right [to self-representation] is unequivocally asserted undermines that right by forcing the accused to proceed with counsel in whom he has no confidence and whom he may distrust. For that reason, a *post hoc* effort to construe as subsequently ambiguous a clear assertion of a desire to proceed on one's own [] contravenes the right. It encourages courts to leave a *Faretta* motion pending, in the hope that the request will eventually be construed as ambiguous. It therefore follows that sufficient protection of the *Faretta* right may only be achieved if the trial court is required to hold a hearing when the right is asserted. On review, a court need look only to the character of the assertion, and not beyond, to assure no error was committed.

*Id.* at 469 U.S. 966, 970 (1984)(Brennan, J., dissenting)(disagreeing with Supreme Court's denial

of petition for certiorari review). Nevertheless, the right to counsel and the right to self-

representation are mutually exclusive rights protected by the Sixth Amendment, and the right to

self-representation is not triggered unless, and until, it is affirmatively asserted. The need for

diligence in pursuing the right to self-representation is even more apparent when, as here, there

has been no conclusive denial of the right to self-representation, and the issue of representation

arises again with the trial court's appointment of new counsel. Considering that only an

informed and proper waiver can result in a defendant relinquishing his or her right to counsel, a

reasonable application of *Faretta* and its progeny provides a basis for interpreting a defendant's

silence regarding his newly appointed counsel's representation at critical junctures of trial as an

implicit relinquishment of the competing right to self-representation. This is so even if the trial

court never addressed a previously asserted motion to proceed *pro se* filed while the defendant

was represented by counsel who has since been replaced. The court finds additional support for

this conclusion in the rulings of other courts upholding the waiver of the right to self-

representation in similar circumstances.[11] *See United States v. Jackson*, 304 Fed. Appx. 424 (6th Cir. 2008); *Fischetti*, 384 F.3d at 152 (explaining the appropriateness of relying on other decisions as indications of reasonable interpretations).

Viewing these principles in conjunction with the long-standing presumption against the waiver of counsel, the court concludes that the trial court's failure to conduct any *Faretta* inquiry on Brathwaite's motion to proceed *pro se* did not constitute an improper denial of the right to self-representation and, therefore, did not constitute a *per se* structural error under *McKaskle*. Thus, for all the reasons stated above, the court will deny claim one.

### B. Claim two: appellate counsel provided ineffective assistance

In his next claim, Brathwaite contends that Foley provided ineffective assistance on direct appeal by failing to present an argument based on the trial court's violation of his right to self-representation. Brathwaite raised this same claim to the Delaware Supreme Court in his appeal of the Superior Court's denial of the motion for new trial, but it is not clear that the Delaware

---

[11]In *Jackson*, the petitioner was represented by counsel during his arraignment when he informed the trial court that he wanted to represent himself. *Jackson*, 2008 WL 5378015, at **3. The trial judge did not engage in a *Faretta* inquiry at that time, instead indicating that he would conduct a hearing at a later date to determine if the petitioner could conduct his own defense. However, no such hearing occurred, because following the arraignment, the trial judge entered an order permitting counsel to withdraw and appointing new counsel. After the appointment of new counsel, the petitioner never objected to counsel's representation nor did he reassert his request to represent himself. On appeal, the Sixth Circuit opined that

> [p]erhaps, in light of [petitioner's] statements . . . . it would have been preferable to hold a full-blown hearing, which was apparently the district court's initial intent. . . . [Yet], based on the facts in this record, we conclude that the post-arraignment acquiescence of the [petitioner] in representation by his newly appointed counsel amounted to a waiver by conduct of the right to self-representation. It would certainly be unreasonable now to hold that the district court abused its discretion in failing to hold a *sua sponte Faretta* hearing once [counsel] had been replaced by new counsel and there was no further objection by [the petitioner].

*Jackson*, at **4.

26

Supreme Court addressed this argument.[12]  Consequently, the court will apply the pre-AEDPA

standard and review the claim *de novo*.[13]  *See Holloway v. Horn*, 355 F.3d 707, 718-19 (3d Cir.

2004).

        The clearly established Supreme Court precedent governing ineffective assistance of

counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S.

668 (1984) and its progeny.  *See Wiggins v. Smith*, 539 U.S. 510 (2003).  Under the first

*Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an

objective standard of reasonableness," with reasonableness being judged under professional

norms prevailing at the time counsel rendered assistance.  *Strickland*, 466 U.S. at 688.  Under the

second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but

---

        [12]In his motion for new trial, Brathwaite argued that Foley provided ineffective assistance
by failing to call several witnesses.  Brathwaite did not raise any ineffective assistance of counsel
claims in his opening brief on appeal from the Superior Court's denial of his motion for new
trial.  However, in his supplemental memoranda, Brathwaite contended that Foley provided
ineffective assistance by refusing to raise the self-representation issue on direct appeal.  (D.I. 25,
Supplemental Memoranda dated Dec. 26, 2005 in *Brathwaite v. State*, No.169,2003, at p. 2.)  In
its decision affirming the Superior Court's denial of Brathwaite's ineffective assistance of
counsel claim, the Delaware Supreme Court opined that:

        [t]he Superior Court also correctly applied the settled standard governing ineffective
        assistance of counsel claims.  Although Brathwaite now contends that he was not
        claiming that his counsel was ineffective, his motion expressly states that, "counsel's
        performance fell below the professional standard in not calling witnesses and putting on
        the only viable defense available."

*Brathwaite*, 2006 WL 1911132, at *3.  Given the Delaware Supreme Court's failure to identify
the substance of the ineffective assistance of counsel claim, the court will proceed as though the
Delaware Supreme Court did not consider Brathwaite's claim that Foley did not raise the self-
representation issue on direct appeal.

        [13]*De novo* review means that the court "must exercise its independent judgment when
deciding both questions of constitutional law and mixed constitutional questions."  *Williams v.
Taylor*, 529 U.S. 362, 400 (2000)(Justice O'Connor concurring).

for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Claims of ineffective assistance of appellate counsel are also governed by *Strickland*. *United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000). Given the nature of the instant claim, Brathwaite can only succeed by establishing a reasonable probability that he would have prevailed in his appeal but for appellate counsel's failure to raise the self-representation issue. *Smith v. Robbins,* 528 U.S. 259, 287-88 (2000); *Duncan v. Morton*, 256 F.3d 189, 201 (3d Cir. 2001). Brathwaite, however, cannot satisfy this burden; his claim that he was deprived of his right to self-representation lacks merit,[14] and it is well-settled that an attorney does not provide ineffective assistance by failing to raise non-meritorious issues on direct appeal. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Therefore, the court concludes that claim two does not warrant habeas relief.

---

[14]*See supra* at pp. 8-26.

28

### C. Claim three: the trial court violated Brathwaite's due process rights by failing to rule on pre-trial motions[15]

In claim three, Brathwaite contends that the Superior Court violated his right to due

process by failing to "properly delegate" all pre-trial motions prior to the commencement of trial.

Although not clear, the pre-trial motions to which Brathwaite refers appear to be his motions to

proceed *pro se* filed with the Superior Court in March 1997.[16]

To the extent Brathwaite contends that the trial court failed to properly follow some state

court procedure for disposing of state court motions, he has failed to assert a basis for federal

habeas relief.[17] *See Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991)( trial court errors in state

procedure do not rise to the level of federal constitutional claims warranting relief in a habeas

proceeding unless the error renders the proceeding so fundamentally unfair as to deprive the

petitioner of due process under the Fourteenth Amendment). To the extent that Brathwaite is

arguing that the trial court's failure to conduct a *Faretta* hearing on his unequivocal motion to

---

[15]Although claim three contained in Brathwaite's form petition and supporting memorandum also raise a due process claim with respect to the evidentiary hearing held in May 2002 on the motion for new trial, the court will address this argument separately in its discussion of claim four.

[16]After reviewing the record, the court concludes that Brathwaite exhausted this claim when he appealed the Superior Court's denial of his motion for new trial. His Opening Brief in that appeal asserted that the trial court's failure to consider the motions before his trial violated his constitutional rights and constituted a structural error.

[17]Attached to Brathwaite's "Opening Brief" is a document titled "Motion For Mistrial," captioned for the Delaware Superior Court, in which he cites Delaware Supreme Court Rule 12 to support his contention that all motions should be delegated prior to the commencement of trial. (D.I. 4.) Although the court has not found any indication on the Superior Court docket that this motion was ever filed, the court finds the reference to Delaware Supreme Court Rule 12 helpful in ascertaining that at least a portion of Brathwaite's succinctly asserted claim three in this proceeding alleges a violation of state law.

29

proceed *pro se* constituted a structural error requiring a new trial, the court has already denied

this argument in claim one. Simply stated, "[i]t would certainly be unreasonable now to hold that

the [trial] court abused its discretion in failing to hold a *sua sponte Faretta* hearing once [initial

counsel] had been replaced by new counsel and there was no further objection from [petitioner]."

*United States v. Jackson*, 304 Fed. Appx. 424 (Table), 2008 WL 5378015, at \*\*4 (6th Cir. Dec.

23, 2008); *see also United States v. Cesal*, 391 F.3d 1172, 1181 (11th Cir. 2004)("Where it

appears that the defendant has abandoned his right to proceed *pro se*, the district court need not

engage in a dialogue with the defendant to determine if there is a waiver of self-representation, in

the absence of special circumstances.") , *vacated on other grounds by Cesal v. United States*, 545

U.S. 1101 (2005).

### D. Claim four: Brathwaite's due process rights were violated during the May 21, 2002 evidentiary hearing on the Rule 33 motion for new trial

After Brathwaite filed his motion for new trial in 1999, the Delaware Superior Court

determined that an evidentiary hearing was warranted. The hearing started on November 2,

2001, but was not completed until May 21, 2002. Thereafter, in a decision dated March 17,

2003, the Superior Court denied the motion for new trial, holding that Brathwaite had not met the

standards for newly discovered evidence. *Brathwaite*, 2003 WL 1410155, at \*4. The Delaware

Supreme Court ultimately affirmed that decision. *Id.* at \*5.

Now, in claim four, Brathwaite complains about the procedures utilized by the Superior

Court during the May 2002 evidentiary hearing regarding the "newly discovered evidence" that

formed the basis for his motion for new trial. He contends that the Superior Court violated his

due process rights during the May 2002 evidentiary hearing by discounting exculpatory and

"newly discovered evidence," namely, a letter and picture he received from one of the rape

victims and her sister after trial. Brathwaite also argues that the Superior Court violated his due process rights by failing to utilize the standard articulated *State v. Chao,* 1995 WL 412364 (Del. Super. Ct. Feb. 17, 1995) to evaluate his "newly discovered evidence" claim that state witnesses committed perjury during his trial.[18]

As an initial matter, the court doubts that Brathwaite's terse assertion to the Delaware Supreme Court regarding the trial court's violation of his right to a "fair trial" with respect to the trial court's handling of the evidentiary hearing can be viewed as satisfying the "fair presentation" component of the exhaustion doctrine, especially because the thrust of Brathwaite's argument in his appeal of the denial of his motion for new trial was based solely on Delaware state law. Nevertheless, even if the instant claim is unexhausted, the court opts to deny the claim as meritless pursuant to 28 U.S.C. § 2254(b)(2).

In this case, the Delaware Supreme held that the Superior Court properly denied Brathwaite's motion for new trial pursuant to the standard articulated in *State v. Hamilton*, 406 A.2d 879 (Del. Super. Ct. 1974) rather than under the *Larrison* standard articulated in *State v. Chao,* 1995 WL 412364 (Del. Super. Ct. Feb. 17, 1995) and *Blankenship v. State*, 447 A.2d 428, 233 (Del. 1982). *Brathwaite*, 2006 Wl 1911132, at *2; (D.I. 25, Opening Brief dated Jan. 30, 2004, in *Brathwaite v. State*, No.169,2003). Although Brathwaite asserts that the Delaware Supreme Court violated his due process rights by failing to review his newly discovered evidence

_____

[18]According to Brathwaite, one of the victims who testified that Brathwaite raped her intentionally withheld exculpatory evidence in order to secure his conviction. He asserts that, after his conviction but before his appeal, this victim sent him at least one photo of herself in a highly revealing and compromising position, along with a strongly worded anonymous letter, proving that he and the victim had a pre-existing, consensual, and intimate relationship, in direct contradiction the testimony she provided during his trial.

31

under *Chao,* the true premise of his argument is that the Delaware Supreme Court should have applied one Delaware precedent over another. This argument, however, fails to warrant relief; federal habeas corpus relief does not lie for errors of state law,[19] and a federal habeas court must accept the a state's highest court's interpretation and application of state law. *Bradshaw v. Richey,* 546 U.S. 74, 126 S.Ct. 602, 604 (2005)(citing *Estelle v. McGuire,* 502 U.S. 62, 67-8 (1991)). Consequently, the court will deny this portion of claim four.

In turn, the court rejects Brathwaite's argument that the Superior Court violated his due process rights by excluding the photo and letter as evidence during the evidentiary hearing. The United States Supreme Court has held that due process of law does not require a state court to consider newly discovered evidence proffered after trial if the trial itself was constitutionally adequate. *See Herrera v. Collins,* 506 U.S. 390, 400-11 (1990)("Claims of actual innocence based upon newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding"). Here, not only does the instant claim fail to question the constitutional adequacy of Brathwait's *trial,* but also, the photo and letter do not even constitute "newly discovered evidence." As explained by the Superior Court, Brathwaite possessed the photo prior to his arrest, "which necessarily means that it was available at the time of trial and discoverable by the exercise of due diligence." In other words, the letter did not amount to "newly discovered evidence" because it supported Brathwaite's trial testimony that this particular victim merely made up the story and lied under oath because she was hurt over the recent breakup of their relationship. *State v. Delaware,* ID No.9510007098, Opinion and Order, at 13 (Del. Super. Ct.

---

[19]*Lewis v. Jeffers,* 497 U.S. 764, 780 (1990).

32

Mar. 17, 2003). Accordingly, Brathwaite is not entitled to relief on claim four.

### E. Claim five: the trial court violated Brathwaite's due process rights by failing to sever the indictment

On November 12, 1996, the grand jury returned a thirty-one count indictment against

Brathwaite, which was a superseding indictment of six previously returned indictments. The

superseding indictment contained the following charges (all of which were in the original six

separate indictments): three counts of second degree unlawful sexual intercourse ("USI")

committed against [victim DM] on September 8, 1995; two counts of second degree USI and one

count of third degree assault committed against [victim CR] on October 18, 1995; one count of

an aggravated act of intimidation committed against [victim CR] on November 4, 1995; seven

counts of third degree USI and two counts of third degree unlawful sexual penetration ("USP")

committed against [victim SC] on January 13, 1996; six counts of first degree USI, one count of

first degree USP, on count of third degree assault, one count of first degree kidnapping, and three

counts of possession of a deadly weapon during the commission of a felony ("PDWDCF")

committed against [victim SO] on June 7, 1996; and one count of first degree robbery, one count

of PDWDCF, and one count of third degree assault committed against [victim DW] on June 7,

1996.

On December 22, 1997, the Superior Court granted Brathwaite's motion to sever the three

counts of the indictment related to victim DW, and the State eventually dismissed these charges.

However, the Superior Court denied Brathwaite's motion to sever any of the other charges from

the indictment. When victim DM failed to appear for trial, six counts of the indictment related to

her were dismissed. The State also dismissed the kidnapping and three weapons charges related

to victim SO.

33

Brathwaite's trial commenced on August 18, 1998. The jury acquitted Brathwaite of one count of third degree USP and one count of first degree USP, and convicted him on the remaining nineteen counts of the indictment.

In claim five of the instant proceeding, Brathwaite contends that he was denied a fair trial when the Superior Court denied, in part, his motion to sever the indictment. The court, however, concurs with the State's assessment that Brathwaite failed to fairly present this issue to the Delaware Supreme Court in his direct appeal, because he presented this claim in terms of an error under the Delaware criminal procedural rules and not in terms of a violation of the due process clause of the United States Constitution. At this juncture, Delaware state court procedural rules would bar Brathwaite from returning to the Delaware state courts with this claim in an effort to satisfy the exhaustion doctrine. *See Bright v. Snyder*, 218 F.Supp.2d 573, 580 (D. Del. 2002). Therefore, claim five is procedurally defaulted, and the court cannot review its merits absent a showing of cause and prejudice, or a miscarriage of justice.

Brathwaite does not assert any cause for his procedural default of claim five at the state court level. In the absence of cause, the court will not address the issue of prejudice. Moreover, Brathwaite's procedural default cannot be excused under the miscarriage of justice exception to the procedural default doctrine because he has not provided any reliable evidence of his actual innocence. Accordingly, the court will deny claim five as procedurally barred.

### F. Claim six: the Superior Court improperly permitted the State to amend the indictment

Prior to trial, Brathwaite moved to dismiss Counts IV and V of the indictment charging him with second degree unlawful sexual intercourse with victim CR because the counts omitted

34

the phrase "without her consent."[20] In response, the State moved to amend Counts IV and V of

the indictment to include the words "without her consent," arguing that the omission was the

result of a typographical error and that Brathwaite had not been prejudiced because he had

adequate notice of the charges. The trial court permitted the State to amend the indictment to

include the omitted words. *Brathwaite*, 1999 WL 1090581, at *1.

On direct appeal, Brathwaite asserted that the trial court erred as a matter of law in

denying his motion to dismiss the two counts because they failed to state an essential element of

the charged offense. He argued that the issue was not one of notice, but rather, it was "more

fundamental – whether the trial court can rescue a defective indictment, thereby superceding the

authority of the Grand Jury indictment process." (D.I. 25, Appellant's Op. Br. in *Brathwaite v.

State*, No.549,1998, at p.23.) The Delaware Supreme Court rejected this argument, opining

> Delaware Superior Court Criminal Rule 7(e) authorizes the trial court to 'permit an
> indictment or an information to be amended at any time before verdict or finding if no
> additional or different offense is charged and if substantial rights of the defendant are not
> prejudiced.' Therefore, the trial court did not abuse its discretion in permitting the
> amendment of the reindictment where no additional or different offense was charged and
> there was no prejudice to the defense. *Malloy v. State*, 462 A.2d 1088 (Del. 1983); *Cf.*

---

[20]The captions of Counts IV and V plainly stated "Unlawful Sexual Intercourse Second
Degree, in violation of 11 Del.C., Section 774, a class A felony." Count IV charged that "Kevin
Brathwaite, on or about the 18th day of October 1995, in the County of New Castle, State of
Delaware, did intentionally engage in sexual intercourse with [victim CR] by placing his penis
into her vagina and the defendant inflicted physical injury upon the victim on the occasion of the
crime." Count V charged that, "Kevin Brathwaite, on or about the 18th day of October 1995, in
the County of New Castle, State of Delaware, did intentionally engage in sexual intercourse with
[victim CR] by placing his penis into her anus and the defendant inflicted physical injury upon
the victim on the occasion of the crime." (D.I. 25, App. to Appellant's Op. Br. in *Brathwaite v.
State*, No.549,1998, at A-10 to A-11.) Counts I-III similarly charged Brathwaite with unlawful
sexual intercourse in the second degree involving victim DM, and these counts included the
language "without the victim's consent." All of the remaining sexual offenses enumerated in the
indictment also contained the phrases "without the victim's consent" or "without her consent."
(D.I. 25, State's Ans. Br. in *Brathwaite v. State*, N.549,1998, at p. 23.)

*Johnson v. State*, 711 A.2d 18 (1998).

Now, in claim six of this proceeding, Brathwaite asserts that the Superior Court denied him a fair trial by permitting the State to amend Counts IV and V of the indictment by adding the words "without her consent."   The claim, however, is unavailing.  The Fifth Amendment right to a grand jury indictment does not apply to State criminal prosecutions,[21] and therefore, "the legality of an amendment to an indictment is primarily a matter of state law."  *United States ex. rel Wojtycha v. Hopkins*, 517 F.2d 420, 425 (3d Cir. 1975).  In turn, claims based on errors of state law are not cognizable on federal habeas review, and federal courts cannot re-examine state court determinations on state law issues.  *Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991);  *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ; *Riley v. Taylor*, 277 F.3d 261, 310 n.8 (3d Cir. 2001).  In this proceeding, Brathwaite does not contend that he lacked notice of the charges against him, but rather, that the amendment confused the jury.[22]  *See c.f. Wojtycha*, 517 F.2d at 425 (acknowledging that an amendment to a State indictment may raise federal due process issues when the defendant is deprived of notice of the charges against him).  Therefore, the court will deny claim five because it fails to present an issue cognizable on federal habeas review.

_____

[21]*See Apprendi v. New Jersey*, 530 U.S. 466, 477 n.3 (2000);  *Hurtado v. California*, 110 U.S. 516 (1884).

[22]The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation."  U.S. Const. amend VI.  This right applies to the states through the Fourteenth Amendment.  *In re Oliver*, 333 U.S. 257 (1948).  Consequently, a state prisoner has the right "to receive reasonable notice of the charges against him." *Coffield v. Carroll,* 2004 WL 2851801, at *5 (D. Del. Dec. 1, 2004); *cf. Peters v. Kiff*, 407 U.S. 493, 496 (1972).

36

## V.  CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2.  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The court concludes that Brathwaite's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable with respect to claims two through six, and therefore, the court declines to issue a certificate of appealability for these claims.  Nevertheless, given the explicit wording of *McKaskle*'s pronouncement that "the **right** [to self-representation] is either respected or denied; its deprivation cannot be harmless," the court believes that reasonable jurists could disagree with the court's decision for claim one that the trial court's failure to conduct a *Faretta* inquiry in Brathwaite's case did not amount to an improper denial of the right to self-representation. Simply stated, the right to self-representation cannot be effectuated without a valid waiver of the right to counsel. Failing to conduct a *Faretta* hearing in Brathwaite's case prevented the effectuation of his right to self-representation for a

37

portion of his pre-trial proceedings, and at least one court has found that a defendant cannot

waive the right to self-representation if that right has never attached.[23]  *See Moore v. Haviland,*

---

[23]In *Moore,* the Sixth Circuit Court of Appeals held that the trial court's failure to conduct any *Faretta* inquiry on the petitioner's unequivocal request to proceed *pro se* constituted structural error, and affirmed the district court's granting of federal habeas relief. The Sixth Circuit opined that it would be an unreasonable application of *Faretta* to hold that the petitioner could waive his right to self-representation through acquiescence because, given the absence of any *Faretta* inquiry, the right to proceed *pro se* had never attached. Simply stated, "a party allegedly waiving his right to self-representation" must "actually kn[o]w that he was in possession of that right at the time of the purported waiver." *Id.* at 795.

The court notes that it has cited another Sixth Circuit case, *Jackson,* to support its conclusion that the trial court's failure to hold a *Faretta* hearing did not amount to an improper denial of Brathwaite's right to self-representation. *See supra* at p. 25.  To reiterate, in *Jackson,* the Sixth Circuit held that "the post-arraignment acquiescence of the [petitioner] in representation by his newly appointed counsel amounted to a waiver by conduct of the right to self-representation. It would certainly be unreasonable now to hold that the district court abused its discretion in failing to hold a *sua sponte Faretta* hearing once [counsel] had been replaced by new counsel and there was no further objection by [the petitioner]." *Jackson,* at **4.  In reaching this decision, the Sixth Circuit Court of Appeals noted that *Moore* had been decided a few months prior, but explained that the facts of *Jackson* were so distinguishable from those in *Moore* that it was not required to follow the same analysis. Specifically, the *Jackson* court emphasized that, although Jackson's statements proposing self-representation were clear, they were not altogether unequivocal when viewed in context with his subsequent failure to object to the appointment of new counsel and reassert his request to proceed *pro se* upon such appointment. The *Jackson* court emphasized that Moore had asserted his desire to represent himself "forcefully and continuously, both in open court and by written motion. He was not only deprived of anything resembling a *Faretta* inquiry, but was affirmatively discouraged by the trial the trial judge. . . . [And,] unlike Jackson, he did not manifest, in writing or by his conduct, any acquiescence in proceeding to trial while still represented by his original, repudiated counsel." *Jackson,* 2008 WL 5378015, at **5.

Despite the *post hoc* explanation provided in *Jackson,* the court views the discrepancy between the holdings and analysis in *Moore* and *Jackson,* decided a mere few months apart by the same federal circuit court, as an indication that reasonable jurists could disagree as to whether the absence of any *Faretta* hearing in Brathwaite's case constituted structural error under *McKaskle. See Fischetti,* 384 F.3d at 152, n.5 (on habeas review, it is proper to consider non-Supreme Court cases decided after the state case at issue for evidence of what courts would view as reasonable interpretations of Supreme Court law).  In addition, the court notes that the Supreme Court recently denied the State of Ohio's petition for writ of certiorari. *Welch v. Moore,* - S.Ct. -, 2009 WL 1402268 (Oct. 5, 2009).  One of the arguments raised by the State of Ohio was that the trial court's failure to conduct a *Faretta* inquiry and issue a formal denial of Moore's request to proceed *pro se* should not have constituted an automatic basis for granting the

531 F.3d 393 (6th Cir. 2008); *see also United States v. Vas*, 2006 WL 151377 (E.D. Pa. May 30, 2006)("even well founded suspicions of [a defendant's] manipulative tactics do not overcome a court's duty to conduct the *Faretta* hearing").

Accordingly, the court concludes that petitioner has made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) with respect to claim one. Therefore, the court will issue a certificate of appealability to determine whether the trial court's failure to conduct a *Faretta* hearing on Brathwaite's unequivocal assertion of the right to self-representation constituted a structural error requiring a new trial

## VI. CONCLUSION

For the reasons stated, Brathwaite's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied, and a certificate of appealability with respect to claim one is granted. An appropriate order shall issue.

---

writ of habeas corpus, because the continuation of the proceedings with defense counsel in place was equivalent to a denial of the request. Petition for Writ of Certiorari, *Welch v. Moore*, 2009 WL 1398914, at *10-12 (No. 08-1425).

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEVIN C. BRATHWAITE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. A. No. 06-472-GMS |
| | ) |
| PERRY PHELPS, Warden, and | ) |
| ATTORNEY GENERAL OF THE | ) |
| STATE OF DELAWARE, | ) |
| | ) |
| Respondents. | ) |

### ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1. Petitioner Kevin C. Brathwaite's petition for the writ of habeas corpus filed pursuant

to 28 U.S.C § 2254 is **DISMISSED**, and the relief requested therein is **DENIED**.  (D.I. 1.)

2. A certificate of appealability is **ISSUED** with respect to the question as to whether the

trial court's failure to conduct a *Faretta* inquiry on Brathwaite's unequivocal motion to proceed

*pro se* constituted a structural error under *McKaskle v. Wiggins*, 465 U.S. 168 (1984).  *See* 28

U.S.C. § 2253(c)(2).

Dated:  Oct 15        , 2009

_____
CHIEF, UNITED STATES DISTRICT JUDGE